Coal Co. of St. L. v. Block & Hartman Smelting Co.

53 565
80 409

## Consolidated Coal Company of St. Louis v. The Block & Hartman Smelting Company.

1. NOTICE—*Service upon a Clerk or Servant.*—To be efficient, a notice must be given to one whose situation and relation to the principal imply that he has authority to act in the particular matter to which the notice relates.

2. SAME—*Material to the Right of Action.*—Where notice to the adverse party is a material element of the right to maintain the action, such notice must be averred, and proved as averred.

3. SAME—*Service by Mailing.*—The rule as to the effect of mailing notice is understood to be: (1) By the commercial law a notice properly stamped and addressed and so mailed, is *per se* notice, whether received or not; (2) by the general rule of the common law, the effect of mailing a letter or notice, is different. It is sent by mail at the sender's risk of its being actually received; though a presumption of law is thereby created of its receipt, it is subject to be rebutted.

4. SAME—*Where a Contract Requires Notice.*—The rule is the same where a contract expressly requires notice to be given, and one where impliedly by law, or by a contract, notice is required.

5. CONTRACT—*What Is Not an Option.*—A contract which obligates one party to sell and the other to buy and pay for merchandise at a fixed price, is not an option contract.

6. DAMAGES—*Breach of Contract to Furnish Coal.*—Under a contract to furnish certain kinds of coal at a fixed price for a particular purpose, if the contractor fails to furnish the coal, and the buyer is obliged to buy elsewhere a more expensive article at a higher price, he may recover the difference in price as damages.

Memorandum.—Assumpsit for breach of contract. Appeal from the Circuit Court of St. Clair County; the Hon. ALONZO S. WILDERMAN, Judge, presiding. Heard in this court at the February term, 1894. Reversed and remanded. Opinion filed June 23, 1894.

The opinion states the case.

APPELLANT'S BRIEF, CHARLES W. THOMAS, ATTORNEY.

There was no competent proof of the service of the notices set out in the declaration. They were mailed to the general manager of appellant at his usual address in stamped envelopes. This is a *prima facie* delivery, or raises a question to be settled by a jury in every case except where the contract by its terms requires notice to be given, as in this case. Where the contract requires notice to be given it

must be shown by competent evidence that the notice was actually received. A *prima facie* case is not made by proof of mailing in a stamped envelope. Amer. & Eng. Enc. Law, Vol 16, p. 825, n. 2; Castern v. Farmers, etc., Ins. Co., 50 Mich. 273.

There are many cases in which no contract required the notice to be given where mailing was held to make a *prima facie* case. In this category are Meyer v. Krohn, 114 Ill. 574, and Rosenthal v. Walker, 111 U. S. 185, which were cited by appellee's counsel in the Circuit Court, but these cases have no application to the case at bar. It falls under an entirely different principle.

### APPELLEE'S BRIFF, HAMILL & BORDERS, ATTORNEYS.

Option contracts which have been held to be within the prohibition of the statute are contracts which give a privilege to deliver or not to deliver the article contracted for, or a privilege to call or decline to call for such delivery. Pixley v. Boynton et al., 79 Ill. 351; Miller v. Bensley & Wagner, 20 Ill. App. 528.

The rule is well settled that if a letter, properly directed, is proved to have been put into the post office, it is presumed from the known course of business in the post office department that it reached its destination at the regular time, and was received by the person to whom it was addressed. Rosenthal v. Walker, 111 U. S. 193.

When the notice is not of that character that the mere mailing of it is sufficient to charge the party with notice, such mailing will, however, be a step in the direction of actual notice, and slight corroborative evidence would warrant the inference that such notice was received. Wabash, St. Louis & Pacific Ry. Co. v. Pratt, 15 Ill. App. 180; Huntley v. Whittier, 105 Mass. 351; Wade on the Law of Notice, Sec. 501.

MR. PRESIDING JUSTICE SAMPLE DELIVERED THE OPINION OF THE COURT.

The appellee recovered a judgment against appellant of $7,343.43 as damages for failure to comply with a written

contract entered into between the parties, of date November 2, 1886, the substance of which is: 1. Appellant agreed to sell and furnish to appellee, f. o. b. cars at its mines near Belleville, Illinois, on the L. & N. R. R., within five miles of appellee's smelting works, all the coal it required for use for a period of ten years, beginning November 1, 1886, at the following prices: for lump coal, $81\frac{1}{4}$ cents per ton; for nut and slack coal mixed, 35 cents per ton; for slack coal $2 per car load: 2. The appellee agreed to take from appellant all the coal and slack required for its works, located near Belleville, during the time above mentioned, and to pay therefor the prices above named, on or before the 10th day of each month for coal and slack delivered the month previous: 3. The right was reserved to change from time to time the relative quantities and kinds of each kind of coal to be furnished, by appellee giving to the coal company at least thirty days notice of its desire to do so.

The declaration alleges that in pursuance of said contract appellee, on the 29th day of January, 1889, gave appellant notice in writing that it required two cars of slack coal and two cars of nut and slack mixed coal per day, within thirty days from said date, and requested the same be furnished in the above quantities and kinds of coal, until further notice. It alleges that on the 5th day of November, 1889, it gave a similar notice to appellant that thirty days after that date it required seven cars of slack, and seven cars of mixed coal per week until further notice. It alleges that on the 3rd day of January, 1890, it gave a like notice, that thirty days thereafter, it would require ten cars of slack, and twelve cars of mixed coal per week until further notice; that the appellant failed to comply with such notices, whereby appellee was compelled to buy coal at a price in excess of the price agreed upon in said contract, for the use of its works, to its damage.

The evidence shows that on the 10th day of May, 1889, the appellee gave appellant written notice that, thirty days after that date, it would " require a daily supply of one car of nut and slacked mixed, and two cars of slack coal until

568 · APPELLATE COURTS OF ILLINOIS.

VOL. 53.] Coal Co. of St. L. v. Block & Hartman Smelting Co.

further orders;" and on the 10th of September, 1889, gave appellant written notice : " We shall require no coal during the first week of October, and about one car thereafter, so if convenient, kindly ship only this amount."

The notice of January 29, 1889, went into effect March 1, 1889, if served; the notice of May 10, 1889, on the 10th day of June, 1889, and that of September 10, 1889, went into effect immediately, and continued in force until thirty days after the 5th day of November, 1889, when another notice was given, which went into effect December 5, 1889. The declaration, it will be observed, avers that the first notice, January 29, 1889, was in force until December, 1889, or at least that is the effect of the averment, and on this theory damages were assessed by the court. Necessarily each subsequent notice superseded and annulled the one immediately preceding it; therefore the first of the above notices, if served, ceased to operate after June 10, 1889. The contract impliedly required the appellee to inform appellant of the amount of coal to be furnished, and if it materially changed the quantity and kind, to give thirty days notice thereof. It is not suggested that appellant was informed of the relative and respective amounts required except by a written notice. Was there proof of service of the notice of January 29, 1889 ? The record has been carefully examined and we fail to find such proof. This notice was not served by mail, but A. M. Block, whose relation to appellee is not shown, testified that he gave the original, of which he retained a letter press copy, to some one in the general office of appellant company, whom he did not know, what relation to the company such person sustained he did not know, and requested its delivery to Mr. Simpson, the general manager.

In a conversation this witness had with the latter, the manager stated he could not recollect anything about the letter. This witness states that a clerk told him the notice had been received, and he believes Mr. Simpson acknowledged its receipt by some correspondence, to which evidence objection was made, and no letter was produced acknowledging such receipt, or attempt made to prove its loss. There

Coal Co. of St. L. v. Block & Hartman Smelting Co.

is no proof of the receipt of the notice by any admission. The delivery of the notice to some person in the general office of appellant, though a clerk, is not sufficient. To be efficient, a notice must be given to one whose situation and relation to the principal imply that he has authority to act in the particular matter to which the notice relates. Bank v. Sherburne, 14 Ill. App. 572; Wade on Notice, 1st Ed., Sec. 502. The averment that this notice was given to appellant being material to the right of action, must be proven as alleged. Higgins v. Lee, 16 Ill. 496; Metz v. Albrecht, 52 Ill. 492; Ayers v. Chicago, 111 Ill. 411.

The fact that appellant furnished some coal during the time is not corroborative or original proof it was furnished in pursuance of this notice, for at its date, appellant had been supplying appellee with coal over two years, evidently under some notice of the amount required. The appellees recovered damages under this alleged notice for the months of April, May, June, July, August and September, 1889, to the amount of several hundred dollars, to which it was not entitled for the reasons above stated.

The remainder of the damages are based upon the notices alleged to have been given on the 5th day of November, 1889, and on the 3d day of January, 1890, having gone into effect, if at all, respectively, on the 6th day of December, 1889, and 3d day of February, 1890. This suit was brought on the 5th day of November, 1890, but it was agreed that if there is any liability, all damages for which the defendant may be held liable up to January 1, 1892, may be recovered in this suit exclusive of March, 1889.

Under the former notice, seven cars of slack and seven of mixed coal were demanded to be supplied per week, while under the latter notice, ten cars of slack and twelve of mixed were required per week. The former notice was, in effect, a few days over eight weeks, while the latter was in force continuously thereafter, covering a period of nearly twenty-three months, if they were properly given or served, which is denied by appellant.

The points made against the notices are, 1, that a proper

570    APPELLATE COURTS OF ILLINOIS.

VOL. 53.]   Coal Co. of St. L. v. Block & Hartman Smelting Co.

construction of the contract required appellee to take a certain proportionate share of each kind of coal during the entire continuance of the contract, while the notices call for only two of the three or four different kinds of coal; 2, the contract provides for the sale of the lump, top and mixed coal by the ton, while the notices call for a supply by the car load, which, as claimed, is not in compliance with the contract, and renders the amount demanded indefinite and uncertain, owing to the different capacity of cars; 3, the contract itself providing for notice, when a material change in quantity of each kind of coal to be furnished is desired, sending same by mail, does not in such case make *prima facie* evidence of its receipt.

The first point is met by the opinion in 36 Ill. App. 38, between same parties, which suit was brought to recover damages for failing to furnish coal as required during the month of March, 1889, under the first notice set out in the declaration in this case, of date January 29, 1889, demanding the delivery of two cars of slack coal and two cars of nut and slack mixed per day. The contract provided the first party, appellant, agrees to furnish " all the coal the said party of the second part will require for their use at their smelting works for the term of ten years " at a certain price for lump top, mixed and slack coal, respectively. The " second party agrees to take from said first party all the coal and slack required by them for their works, during the time above mentioned." The contract did not compel appellee to take a kind of coal it did not require, although appellant was bound by the contract to sell appellee " all the lump coal, nut, mixed and slack which said party of the second part may require for the smelting works." " And in case said second party shall desire to use top or selected coal said first party agrees to furnish the same at twenty-five cents per ton added to the price agreed to be paid for lump coal." This contract obligated the appellant to furnish four different kinds of coal, if appellee required such coal to operate its works. The words " desire to use" and "require " signify the same and vest appellee with the

right to determine the quantity and kind of coal to be furnished. All the coal it did require, the contract obligated it to buy of appellant, except, as provided in the contract, it should be found necessary " to purchase coal outside of the Belleville district, for any class of work which may require a quality of coal having less sulphur," and except in case of a strike in appellant's mines, by which it might be unable to furnish the coal according to the contract.

The provision in the contract " that the relative quantities and kinds of coal to be furnished may be changed from time to time by giving to the coal company not less than thirty days' notice whenever any material change in the quantities of each to be furnished is desired," is not a limitation upon the right of appellee to determine either the amount or kind of coal it required. The purpose of this clause was to benefit appellant by enabling it to prepare for such material change, if made, within the thirty days. If the purpose was to restrict such right of appellee, and compel it to take some of each kind of coal, though not required for consumption in the operation of its works, then it would have been a literal compliance with the contract, had there been ordered one ton of lump and top coal each per year, for, concededly, under this provision, the power is lodged in appellee to fix the quantity of each kind, under the limitation only, that such coal was required for use at its works. It is not believed these parties contemplated any such construction of the contract. Its purpose was to give appellant thirty days to prepare for a material change in the quantity required, whether the appellee required the four different kinds of coal or only two kinds. This view is strengthened by the fact that, from April, 1889, to January 1, 1892, so far as disclosed by this record, the appellant furnished nut and mixed coal only, under the contract, without protest that the other kinds of coal were not also demanded. The second point is also covered by the decision in 36 Ill. App. *supra*. As to the quantity, the sale of coal to appellee was not by the ton or car load. The sale was of " all the coal said party of the second

572     Appellate Courts of Illinois.

Vol. 53.]   Coal Co. of St. L. v. Block & Hartman Smelting Co.

part will require for their use at their smelting works." The amount so supplied was to be determined by "weights on track; scale weights, at all mines having such scales; from mines not having such scales, the scale weights at the smelting works will govern," as provided by the contract, thus showing that the parties contemplated that the quantity of coal might not be known until after it was delivered to appellee at its works. As the coal was to be delivered in cars, and the coal therein to be weighed, the car load was the natural unit of quantity of demand and supply contemplated by the contract. The appellant must have so understood it, for it supplied coal under demand by the car load, and there is no evidence in this record to show any objection was made.

The third point, that proof of service of demand by mail did not make a *prima facie* case, is not considered to be well taken. The only cases cited in support of the position are Carpenter v. Ins. Co., 4 Howard (N. S.) 185, and Castern v. Farmers, etc., Ins. Co., 50 Mich. 273. In the former case the court holds the evidence shows no such letter, as there claimed, was received by the company. In the latter case, the court holds that the charter of the company required it to notify members of an assessment, and that mere proof of mailing the notice thereof and failure to pay same within the time limited, did not work a forfeiture, on proof being made that the notice was not received until after the forfeiture occurred, when a tender was made of the assessment within the sixty days allowed. In short, the court held the mere mailing of the notice did not, under the terms of the charter, estop the insured from denying its receipt, or rebutting the presumption. The rule as to the effect of mailing notice is understood to be (1) that by the commercial law a notice properly stamped and addressed and so mailed, is *per se* notice whether received or not, but (2) the general rule of the common law as to the effect of so mailing a letter or notice is different. It is sent by mail at the sender's risk of its being actually received, though a presumption of law is thereby created that it was received, which presumption is subject to be rebutted. Walworth v. Seaver, 30 Vt. 728.

This rule is said to be founded on the presumption that public officers will perform their duty. Marston v. Bigelow (Mass.), 22 N. E. 71; 1 Greenleaf on Ev., Sec. 40; Wharton on Ev., Vol. 2, Secs. 1319, 1323, 1328.

The rule is not understood to be different in a case where a contract expressly requires notice to be given, and one where, impliedly by law or by a contract, notice is required. On the dissolution of a partnership actual notice must be given to those having had dealings with it prior thereto, in order to release the firm from future liabilities in transactions thereafter with such persons, but proof of mailing notices to such persons establishes *prima facie*, the receipt thereof. Meyer et al. v. Krohn et al., 114 Ill. 585; Young et al. v. Clapp et al., 147 Ill. 189. For general rule see Dennison v. Taylor, 142 Ill. 54. Actual notice was all that appellant could require, and this it received under the proof and rule of law above announced.

There was no attempt to rebut the presumption arising from the mailing of said notices in envelopes, properly stamped and addressed, although appellant had written notice to produce the same on the trial.

It is also urged, this contract is a mere option and therefore void, and the case of Corcoran v. Lehigh & Franklin Coal Co., 138 Ill. 390, is cited to support this position. A part of the contract involved in that case was held to be void as a mere option, but the reason given—same case 37 Ill. App 581—was that Corcoran did not bind himself to take coal offered. " His position was that he could take it or not as he saw fit."

The contract in this case obligates the appellant to sell and the appellee to take and pay for the coal at the price agreed upon, which clearly distinguishes the cases. The contract is mutually obligatory. A similar contract was sustained in the case of National Furnace Co. v. Keystone Mfg. Co., 110 Ill. 427. The special pleas to which a demurrer was sustained and to which reference is made in the argument, are not referred to in the abstract, and therefore it is assumed no reliance is placed upon this assignment of error. The plea of former recovery did not aver it was for

574 APPELLATE COURTS OF ILLINOIS.

VOL. 53.] Coal Co. of St. L. v. Block & Hartman Smelting Co.

the same breach of the same contract. The contract was divisible and created a continuing liability. The facts set up in all these pleas were admissible under the general issue—former recovery—as well as the other alleged facts. Wann v. McNulty, 2 Gilm. 355. When specially pleaded it operates as a bar. Gray v. Gillilan, 15 Ill. 455. It was not reversible error to sustain the demurrer. Lyon v. Worcester, 49 Ill. App. 642. The damages are alleged to be excessive and computed on a wrong basis. For January, 1890, the appellee demanded that it be furnished with seven cars of slack and seven of mixed coal, per week, while from February 3, 1890, to January 1, 1892, it demanded that it be supplied with ten cars of slack and twelve cars of mixed coal per week. The appellant failed to furnish the amount of each kind of coal required.

From January, 1890, to June, 1891, it did not furnish the quantity of either kind of coal actually consumed in the operation of the works, while from June, 1891, to January 1, 1892, it furnished more of the mixed coal than was required for consumption, on the ratio of ten cars of slack to twelve of mixed, but during no part of the time mentioned, except September, 1891, did it furnish sufficient mixed coal to meet the entire consumption.

The method of arriving at the damages is illustrated by the statement for the month of June, 1891.

June 1, 1891.

Total amount coal required and contract price :

| | | |
|---|---|---|
| Mixed, 540.13 tons, price 35c., total | | $189.04 |
| Slack, 450.11 tons, price 13½c., total | | 60.01 |
| 990.24 | | $249.05 |
| Amount of coal furnished by defendant : | | |
| Mixed, 573.600 tons, price 35c., total | | $200.76 |
| Amount of coal bought from others : | | |
| M. Run, 156.00 tons, price 55c., total | | $ 85.80 |
| Slack, 20.00 tons, price $3 per car, total | | 3.00 |
| M. Run, 240.65 tons, price 45c | | 108.29 |
| 416.65 | | $197.09 |

| | |
|---|---:|
| Amount paid to defendant | $200.76 |
| Amount paid to outsiders | 197.09 |
| Total | $397.85 |
| Should be under contract | 249.05 |
| Excess paid by plaintiff | $148.80 |

It will be observed the quantity of coal furnished by appellant, added to that purchased from others, makes the amount required for consumption, that month. Two objections, as understood, are made to this method of computation, first, that the slack coal was contracted for by the car load and not by the ton, and therefore the estimate of $13\frac{1}{2}$ cents per ton for such coal was erroneous; second, that the mixed coal supplied the quantity required that month, for consumption, except the 416 tons purchased from outsiders, and therefore the measure of damages was the difference between the market price of the coal purchased to make up the deficiency, and the value at the contract price, of the coal supplied by appellant.

As to the first point, it has been heretofore determined the contract of supply or quantity was not by the car load, or by the ton. Those terms are used as units of quantity merely to fix the price, the price of slack coal being fixed by the car load, and other kinds of coal by the ton. The capacity of a coal car was not named in the contract, and therefore it had to be proven. The evidence shows the average is twenty tons, and the contract price of slack coal was $2 per car load. This would make the contract price of slack coal ten cents per ton. The appellee allowed appellant thirteen and a half cents per ton, which was more than the contract price, and therefore appellant has no cause of complaint, if the contract required it to supply such coal in the quantity or proportion demanded, the determination of which will come under the second objection as to the measure of damages.

It will be observed that the statement for the month of June, 1891, assumes that 450 tons of slack and 540 tons of

576 APPELLATE COURTS OF ILLINOIS.

VOL. 53.] Coal Co. of St. L. v. Block & Hartman Smelting Co.

mixed coal, if supplied, would have subserved the purpose of the more expensive coal used. The evidence sustains this assumption.

There is no evidence contradicting it. In fact it is stated the more expensive coal does not work so well, as owing to the construction of the grates of the furnaces, it burns too rapidly. The amount of slack and mixed coal actually required in the above statement is in the same proportion as the demand; that is, 450 tons of slack and 540 tons of mixed coal, bear relatively the same proportion to each other as the ten cars of slack do to the twelve of mixed coal that were demanded of appellant by appellee, to be supplied per week. This element of proportion as to respective amounts of the different kinds of coal to be supplied for use at the smelting works, is a recognized feature of this contract, which is valuable to appellee in the economical operation of its works. No reason is perceived why it is not entitled to the damages that naturally and proximately arise from such breach of the contract. Had the proportionate amount of slack and mixed coal been supplied that was demanded, up to the quantity required, for the month of June, 1891, the cost under the contract would have been $249.05; but, as supplied by appellant and purchased by appellee of outsiders, the cost of coal for the month was $397.85, making a loss of $148.80. This loss evidently arose from the failure of appellant to comply with its contract. But it is said the amount of the mixed coal supplied was within the limit of the written demand, and therefore damages can not be assessed for supplying an excess of such kind of coal. That is, as 540 tons of mixed coal was required for June, and 573 tons of such coal was supplied—thirty-three tons excess—it is said appellee can not be heard to say that thirty-three tons of slack coal, costing $5.30, would take the place of same.

The damages are not for supplying such excess of the more expensive coal, but for failing to supply the less expensive, whereby the more expensive had to be used, at a loss. Had appellee been able to obtain slack coal from outsiders

in sufficient quantities to preserve the proportion of slack and mixed coal required, at the contract price, or at a less price than the mixed coal, and thereby have been able to avoid using the mixed coal, costing thirty-five cents per ton, then there would have been much force in this position of appellants; but this it could not do, as shown by the evidence. The slack coal purchased outside cost thirty cents a ton, which, at that price, could not be obtained in sufficient amounts, while the other coal, to take its place, cost much more. If the position of appellant is correct as to the mixed coal, it would have been good had the four different kinds of coal been demanded, and only the top coal, costing $1.06¼ per ton, been supplied.

If the appellee had not used the thirty-three tons excess of mixed coal, but had purchased of others more expensive coal than that, to take the place of slack, it would have had a right to complain, and in fact does complain because lump coal was purchased outside to supply the deficiency caused by its failure some months to supply sufficient of either mixed or slack. The evidence is that appellee could not purchase outside the kind of coal demanded of appellant, and had to take various kinds from outsiders to operate its works.

The appellee was entitled to the benefit of its contract and is entitled to recover the damages caused by the breach. The evidence of appellee seems to include the cost of coal purchased outside, delivered at its works, while the contract only requires the delivery of coal by appellant at its mines, within five miles of appellee's works. What this would amount to is not known, but apparently such additional transportation would increase the cost. This is referred to for explanation, as the case is reversed on other grounds. No error was committed in refusing the propositions of law submitted by the appellant. The enlargement of appellee's works after the contract was made, requiring the use of more coal, did not affect the contract. The agreement of appellant was to furnish all the coal appellee required for use at its works for a period of ten years without limitation as to

amount. There is no implication in the terms of the contract, limiting the supply to the demand of the works as then constructed. There is no proof that appellant could not readily have supplied the appellee had it desired to do so. It only introduced one witness, its superintendent, to show first, there was a fixed proportion of output of lump, nut and slack coal at the company's mines, taking, as he stated, six cars of lump to make one of mixed, and ten cars of lump to make one of slack; second, that a demand for a car load of coal was not very definite. He nowhere stated the amount of mixed and slack coal produced at appellant's mines, or that the demand could not have been supplied. However, the duty of appellant was to comply with its contract.

For the reasons stated the judgment is reversed and the cause remanded.