## Donald A. Sage and William G. Sage v. The W. H. Purcell Co.

1. CONTRACTS—*For Coal to be Delivered When Required.*—A contract to deliver coal to a party when required, plainly means when required or needed by him in his business, and not simply when asked for; and a neglect to deliver it when not actually required in business does not put the contractor in default.

Assumpsit, for coal sold and delivered. Appeal from the Circuit Court of Cook County; the Hon. EDWARD F. DUNNE, Judge, presiding.

Sage v. W. H. Purcell Co.

Heard in this court at the October term. 1899.   Reversed, and judgment entered here.   Opinion filed July 5, 1900.

**Statement by the Court.**—Appellants sued appellee, declaring on the common counts, to recover for some coal sold and delivered to appellee, pursuant to a written contract, dated July 20, 1895, the coal sued for being delivered in February and March, 1896.   The plea was the general issue and set-off for damages claimed by appellee for alleged failure on appellants' part to furnish to appellee coal in accordance with the contract.   A demurrer to the plea of set-off as amended was sustained, and appellee elected to abide by its plea.   The cause was tried before the court, a jury being waived, upon an agreed statement of facts, and it was stipulated that the plea of set-off as amended should be considered as averring all the facts set forth in the stipulation of facts.   The court found the issues for the appellee.   The appellants moved for a new trial, and the appellee moved for a judgment against appellants upon the agreed statement of facts for the sum of $767, both of which motions were overruled and judgment rendered against appellants for costs in favor of appellee, from which judgment this appeal is taken; errors being assigned by appellants, and also cross-errors by appellee.

The stipulation of facts shows in substance that appellants were retail dealers in coal and appellee was engaged in the malting business, and that the coal in question was purchased by appellee for its use in said business, under the following contract :

"Chicago, July 20, 1895.
The W. H. Purcell Co., No. 1107 Tacoma Bldg., City.

Gentlemen :   We offer you fifteen hundred (1,500) tons, more or less, of anthracite pea coal (screened) equal in quality to the pea coal recently tested by you at Kensington.

This coal to be delivered when required in car lots, between Sept. 1st, 1895, and Sept. 1st, 1896, on your malthouse tracks at Kensington, Illinois.

Price to be $2.75 delivered per net ton 2,000 pounds. Payments to be made the 10th of the month following shipments.

This proposition contingent upon strikes, accidents, delays of carriers and other delays beyond our control.

Railroad scales' weights to govern settlements.

Yours truly,

SAGE & CO.

Accepted................

For The W. H. Purcell Co."

The coal actually furnished under the contract was 785⅓ tons, and was all paid for except what was delivered in February and March, 1896, amounting to $505.05, at the contract price. On the coal delivered in February appellee had advanced for transportation charges $42.22. The only delivery after February was on March 4, 1896, which was twenty-four tons and 1,500 pounds. November 27, 1895, appellee ordered appellants to ship it two cars of coal and one car a week until further notice, and by subsequent orders this direction was repeated, and on February 19, 1896, appellee notified appellants that it was running close on coal, that appellants were then short in filling appellee's orders four cars, and that it would be obliged to provide its wants from other sources, and would expect appellants "to protect us as per agreement." The coal delivered in the month of January, 1896, was paid for by check of appellee March 3, 1896, at which time appellee insisted that it was necessary that it should have a supply of coal ahead, and urged upon appellants the necessity of shipping the extra supply of coal which it had called for. Appellants, by letter of November 27, 1895, promised appellee that they would ship one car a week, as requested by appellee, until further notice.

March 10, 1896, appellants presented a bill to appellee for the coal delivered in the February preceding, which appellee refused to pay because, as it claimed, six cars of coal previously ordered by it had not been delivered, and appellee's agent then told the plaintiffs that appellee would not pay the bill until more coal was delivered.

On March 11, 1896, appellants notified appellee that they would deliver no more coal on the contract, and that they would and did thereby rescind the contract, because appel-

lee had failed and refused to pay for the coal shipped and delivered in February, 1896. No coal was thereafter delivered under the contract, and afterward, on the same day, appellee wrote to appellants that inasmuch as they would not deliver any more coal, " we are obliged to pick up our wants on the market and hold you responsible for whatever more we must pay for it." March 13, 1896, appellee sent appellants a similar letter to the last mentioned, urging them to ship five cars of coal at once, and " keep up shipments of two cars a week," and insisting upon appellants living up to the contract. March 31, 1896, appellee notified appellants by letter to continue shipments as originally ordered " or we will keep on buying, charging you with the difference in cost." On March 13, 1896, appellee made its first purchase of coal from any person other than appellants, and the coal then purchased was delivered about the 17th of March, 1896, and up to and including the date of that delivery appellee " had used and was then using coal from the supply it had received from plaintiffs under said contract." It was necessary for the safe and proper conduct of appellee's malting business that it have at least ten days' supply of coal on hand at all times, and that seven tons per day were used by appellee in operating its said business.

The market value of the kind of coal mentioned in the contract at the place fixed for delivery by the contract was on March 10, 1896, and during the whole of that month, $5.50 per ton, and at no time between March 10th and September 1, 1896, was the market value of that kind of coal as low as the contract price, and because of appellants' failure to deliver coal on the contract to appellee after March 10, 1896, it was obliged to buy on the open market from time to time the coal remaining undelivered under the contract, as its wants required, commencing March 13, 1896, and ending July 30, 1896, and by reason of the higher market value of coal appellee was bound to and did pay $1,228.02 in excess of what it would have paid under the contract had appellants delivered the coal as specified in the contract.

P. H. BISHOP, attorney for appellants; CHARLES C. BUELL, of counsel.

DUPEE, JUDAH, WILLARD & WOLF, attorneys for appellee.

MR. JUSTICE WINDES delivered the opinion of the court.

The question presented is as to whether appellants were in default under the contract on March 10, 1896, when they demanded payment of the coal delivered in February preceding. If they were not in default and had not violated their contract on or prior to that day, then they were justified in declaring the contract rescinded, as they did, on March 11, 1896, for appellee's failure and refusal on the day previous to pay for the coal shipped and delivered in February, and are entitled to recover at the contract price for all coal they had delivered to appellee prior to that day, with interest. If appellee violated its contract in refusing to pay on March 10, 1896, then it can not recover for any alleged damages claimed to have been incurred by reason of appellants' failure to deliver coal after it refused to pay. Minnesota L. Co. v. Whitebreast Coal Co., 160 Ill. 85; Harber Bros. Co. v. Moffat C. Co., 151 Ill. 84.

The fact that appellants did not deliver one car a week, as ordered by appellee, and as they had promised to do in November, 1895, is not of importance in determining whether appellants were in default upon March 10, 1896, on their contract or not. By the contract it was their duty to deliver coal to appellee " when required in car lots between September 1, 1895, and September 1, 1896." This plainly means when required or needed by appellee in its business between those dates. Minnesota L. Co. case, *supra.*

But if it be necessary to look to the acts of the parties to determine what was the meaning of the contract in this respect, we think it is clearly apparent from the agreed statement of facts that it was the intention of the parties that the coal should be furnished as appellee should need it in its business. This, we think, was done. All that was necessary to the proper conduct of appellee's business was that it should have on hand a ten days' supply of coal. The

last coal delivered by appellants was on March 4, 1896, and appellee used the coal furnished by appellants from that time up to on or about March 17th, so that instead of appellee not having the coal furnished by appellants necessary for its business, it had on hand a thirteen days' supply.

Appellants, then, not being in default under the contract, they are entitled to recover for the coal delivered prior to March 10, 1896, and appellee being in default for failure to pay for the coal delivered in February, 1896, is not entitled to any damages by way of recoupment or set-off. In fact the record fails to show that on March 11, 1896, when appellants elected to rescind the contract, any damages whatever had been suffered by appellee, and that up to that date it was insisting on appellants' continuing to deliver coal pursuant to the contract. We think the case of Harber Bros., *supra*, and the cases therein cited, are conclusive upon the question presented.

It follows, therefore, that the learned trial judge erred in finding the issues for the defendant, and that the error, if there was error, in sustaining the demurrer to the amended plea of set-off, was harmless, because, under the agreed statement of facts, the appellee is not entitled to recover anything by way of set-off.

The judgment is therefore reversed, and judgment will be entered in this court for the amount of coal delivered by appellants to appellee and not paid for, being $505.05, less $44.22 advanced by appellee for transportation charges, with interest at five per cent per annum from March 10, 1896, making in all $560.03, together with their costs in the Circuit Court and in this court.