The Chicago Title and Trust Company *et al.* Appellees, *vs.* The Sagola Lumber Company, Appellant.

*Opinion filed December 22, 1909.*

1. Evidence—*a party knowing of disqualification of a witness should object before testimony is given.* A party who knows of the disqualification of a witness offered against him may make his objection before the testimony is given or he may waive the disqualification and permit him to testify, but in such case he cannot afterward raise the question of disqualification by a motion to exclude the evidence.

2. Same—*when testimony as to conversation with a deceased agent should not be stricken out.* Testimony of the plaintiff relating to a conversation with the defendant's agent, who is dead, should not be stricken out, where the agent was living at the first trial of the case and testified to his version of the conversation, and his testimony in that case is read to the jury on the second trial, under a stipulation made before the trial was begun.

3. Same—*what evidence does not vary terms of written contract.* Where a written contract provides for the sale of a lumber

company's output of certain described stock except such portions of said stock as such company might need to supply its yard in a certain town, there being nothing definite in the contract as to the probable quantity or the character of the stock so reserved, testimony as to what was said at the time the contract was made as to the probable quantity and character of the lumber which would be required at such yard does not vary the terms of the written contract and is admissible.

4. CONTRACTS—*breach of contract—when doctrine of waiver is not involved.* Where the vendor in a lumber contract gives notice to the vendee that he will not make any further deliveries under the contract the vendee may treat such notice as a breach and bring his action at once, and in such case the doctrine of waiver by the vendor of further performance by vendee is not involved.

CARTWRIGHT and DUNN, JJ., dissenting.

APPEAL from the Branch Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. BEN M. SMITH, Judge, presiding.

LAWRENCE P. CONOVER, for appellant:

A plaintiff cannot aver performance of his part of a contract and recover under proof of a waiver of performance. This is a fatal variance and one which entitles the defendant to an instruction directing the jury to find a verdict in his favor. 4 Ency. of Pl. & Pr. 631; 22 id. 592; *Taylor* v. *Beck,* 13 Ill. 376; *Tichenor* v. *Newman,* 186 id. 264; *Cutter* v. *Powell,* Smith's L. C. (11th ed.) 40; *House* v. *Wilder,* 47 Ill. 510; *Crane Co.* v. *Hogan,* 228 id. 338; *Traction Co.* v. *Hampe,* id. 346.

The seller does not waive performance on the part of the buyer of the conditions precedent unless there is a distinct, absolute and unequivocal refusal by the seller to perform the contract and the buyer promptly thereafter treats and acts upon such refusal as a renunciation and rescission of the contract. 1 Beach on Contracts, sec. 409, *et seq.;* 2 Mechem on Sales, secs. 1087, 1088; *Kadish* v. *Young,* 108 Ill. 170; *Roebling's Sons' Co.* v. *Lock Stitch Fence*

*Co.* 130 id. 660; *Smoot's case,* 15 Wall. 36; *Dingley* v. *Oler,* 117 U. S. 490; *Lumber Co.* v. *Alley,* 73 Fed. Rep. 603; *Ault* v. *Dustin,* 100 Tenn. 367; *McGregor* v. *Ross,* 96 Mich. 103.

A party to an action who has contracted with an agent of the adverse party, the agent having since died, is not a competent witness as to any conversation or admission between himself and such agent. Rev. Stat. chap. 51, sec. 4.

Conversations which occurred before or at the time of the execution of a written contract are not admissible to vary its terms. *Tichenor* v. *Newman,* 186 Ill. 264.

ATWOOD, PEASE & LOUCKS, for appellees.

Mr. JUSTICE VICKERS delivered the opinion of the court:

This is an action of assumpsit commenced by Edward Browne, Robert L. Chapin, William P. Carey and Arthur C. Lombard, as partners doing business as the Browne-Chapin Lumber Company, against the Laing Lumber Company, which has been succeeded by the Sagola Lumber Company, the appellant herein. After the suit was instituted the Chicago Title and Trust Company, as trustee in bankruptcy of Edward Browne, was substituted in the place of the bankrupt, and the suit proceeded to judgment after this change of parties. Plaintiffs below obtained a verdict against the defendant for $4350, from which a *remittitur* of $1007.20 was made, and judgment was then rendered upon the verdict for $3342.80. This judgment has been affirmed by the Appellate Court for the First District, and the defendant below removed the cause to this court for further review.

The action was brought to recover damages for the alleged violation of the terms of a written contract. On the 12th day of May, 1890, the Laing Lumber Company entered into a written contract with the Browne-Chapin Lum-

ber Company by which the former agreed to sell and the latter to purchase all of certain described stock made at the mill of the Laing Lumber Company at Sagola, Michigan, except such portions of said stock as might be required by the selling company for its yard at Iron Mountain, Michigan. The contract specified the different kinds of lumber and fixed a price for each class, all of which was to be dressed and loaded f. o. b. cars Sagola, Michigan, as ordered by the Browne-Chapin Lumber Company. The contract included all of the lumber of the classes named that was then in the mill yards of the selling company. The Browne-Chapin Lumber Company agreed to pay for each shipment made on its orders under said contract in ten days from date of invoice, with two per cent discount for such cash payment or by acceptances at ninety days from date of each invoice. This contract provided that the Browne-Chapin Lumber Company should advance $5000 to the Laing Lumber Company, which was to be re-paid, with interest, from shipments thereafter sent forward under the contract. There was at the same time another contract, known as the "shingle contract," entered into by the same parties, by which the Laing Lumber Company sold to the Browne-Chapin Lumber Company all of the shingles to be thereafter manufactured until the 30th day of November, 1890, which was also the date when the lumber contract expired. Appellees also made an advance of $5000 under the shingle contract. Originally this shingle contract was involved in this litigation, but the damages awarded appellees under the shingle contract were all remitted in the court below and that contract was thereby eliminated from the case. The breach of the lumber contract alleged is, that appellant failed and refused to deliver the lumber mentioned in said contract that was on hand at the time the contract was made and that was manufactured at the mill during the time covered by the contract, thus making it necessary for the appellees to go into the open market and

purchase other lumber to supply its customers at an increased price. The appellant interposed the plea of non-assumpsit and four special pleas. All of the special pleas are based on an alleged settlement. The pleas averred (either by way of payment or accord and satisfaction) the giving of a $1500 note, which was afterwards paid in full discharge of all liabilities under the contract.

Browne, who has gone into bankruptcy since this suit was commenced, testified on behalf of appellees to the making of the contract and that appellant afterwards refused to carry out its terms. The following letter was read in evidence:

"SAGOLA, IRON COUNTY, *Nov. 4, 1890.*

"*Browne-Chapin Lumber Co.:*

"GENTLEMEN—We have your favor of 31st. Rec. orders Nos. 711 and 713, which we will fill. If you should come here about the 12th we might try and fix up matters. It has got so with us that we find no pleasure in filling your orders for lumber. Your customers are so numerous and of such varied ideas that it would seem almost madness or ruin for us to cater to them, when they all know they do not come in direct contact with the shipper. It is a notable fact that this is the rule where the purchaser knows that he can have no direct conflict with the shipper, and we think we have got all we want of it if we can settle up pleasantly and quit. As long as the shingles goes all right we are pleased to fill the contract. Our Mr. Goodshell has set up a shingle mill some four miles north of here. He will talk trade with you when you come over.

"Respectfully yours,

LAING LUMBER CO.,
JOHN O'CALLAGHAN."

Browne testified that on or about the 30th of November, according to his best recollection, he called on appellant and had a conversation with Mr. O'Callaghan, who was then the president of the Laing Lumber Company. His evidence as to the conversation with O'Callaghan is abstracted as follows: "At the conversation on or about November 30th my best recollection is that I said to him: 'Well, we got your letter, and I have come up to see you about it. What are you going to do about this thing?'

'Well,' he said, 'I wrote you the way I feel about it. We have so much trouble in filling those orders that we don't care to go along with that part of the deal any more.' Well, I told him I thought he was to blame himself. I said: 'I have been trying to get you to agree upon a man to grade this lumber up here whose work would be accepted without any complaint and you won't go; have been trying to get you to do that all the year, and I sent a man up here from Marshfield and you wouldn't have him, and it is not our fault. We don't make up these complaints in our office or bring them to you of our own volition. We are representing the views of the men who receive this stock. Your men have been careless and sending us stuff you ought not to send under this contract. It would be a great deal pleasanter to us to have this thing done right. We don't want anything but what is right, Mr. O'Callaghan." He said: 'I don't believe you do, but I have got sick of it.' I said: 'I would like very much to go on and have this stock filled out under the contract and have it done pleasantly.' He said: 'I don't believe I will do it. There is no use of your sending any more orders up here for lumber. I won't fill them. It is all right about the shingles. We are able to agree pretty well with the shingles. We will give you those as everything is pleasant, but I won't fill any more orders for lumber.' "

There was no objection interposed to this evidence or to the competency of Browne as a witness at the time he was examined. Afterwards, during the progress of the trial, appellant moved to exclude all of the evidence of the witness Browne concerning his conversations with O'Callaghan, on the ground that O'Callaghan was acting as the agent of appellant at the time and that O'Callaghan was dead. It also developed during the examination that two other agents of appellant, Mr. Sloan and Mr. Laing, were present at this conversation and that both of them were dead. Appellant's most serious contention in this court is

that the court erred in refusing to strike out Browne's evidence as to his conversations with the deceased agent of appellant.

Section 4 of chapter 51 of the Revised Statutes provides as follows: "In every action, suit or proceeding a party to the same who has contracted with an agent of the adverse party, the agent having since died, shall not be a competent witness as to any admission or conversation between himself and such agent, unless such admission or conversation with the said deceased agent was had or made in the presence of a surviving agent or agents of such adverse party," etc.

It is under this provision of the statute that appellant contends that the evidence of the witness Browne should have been stricken out. To this contention there is more than one sufficient answer. This case was tried the first time during the life of O'Callaghan. He became a witness on behalf of appellant at the first trial and testified giving his version of the conversation which occurred between him and Browne, and by stipulation of the parties before the trial was entered upon it was agreed that O'Callaghan's evidence on the first trial might be read to the jury, and it was afterwards introduced so that the jury had the benefit of the testimony of both witnesses as to this conversation.

Another reason why appellant's contention on this point cannot be sustained is, that there was no objection made to Browne's competency to testify to this conversation at the time the evidence was given. The objection that Browne was disqualified to testify to this conversation, based on the statute, on account of the death of O'Callaghan should have been made at the time the evidence was offered. Where a party is aware of grounds that disqualify a witness, he cannot be permitted to sit by and speculate as to the character of the evidence and afterwards object to the competency of the witness if his evidence turns out to be unfavorable to him. A party against whom a disqualified

witness is offered may object and bring the matter to the attention of the court before the evidence is given, or he may, if he sees proper, waive the disqualification and permit the witness to testify, and by failing to make his objection in apt time he is presumed to have waived his right. (1 Greenleaf on Evidence, sec. 421.) A party cannot afterwards raise the question of the incompetency of a witness by a motion to exclude his evidence if the grounds of exclusion were known to him at the time the evidence was given. (*Hanford* v. *Obrecht,* 49 Ill. 146; *Chicago Union Traction Co.* v. *May,* 221 id. 530.) Appellant knew that O'Callaghan was dead, and when the witness Browne was asked with reference to the conversation the objection to his competency should then have been made. We do not think that appellant has properly saved this question for review.

A further objection is made to the testimony of Browne in regard to the character of the lumber yard at Iron Mountain and what O'Callaghan said at the time the contract was made in relation to the probable quantity and character of lumber that would be reserved under the contract to supply appellant's yard. The objection made to this evidence is, that it tended to vary the terms of the written agreement by substituting the recollection of the witness as to what was said for its terms. To this view we cannot assent. It will be remembered that the written contract excepted lumber that might be required to supply appellant's yard at Iron Mountain. There was nothing definite in the contract as to the probable quantity or the character of lumber that was thus reserved. The contract being ambiguous in this respect, it was not improper to show by parol the situation and circumstances in order to determine what was in contemplation at the time the contract was made. Browne testifies that he knew the character of yard that appellant maintained at Iron Mountain; that it was a small retail yard, and that Iron Mountain

was a mining station about twenty miles from Sagola, and that O'Callaghan explained to him at the time that what he wanted reserved was a sufficient quantity of low grade lumber to keep up the small retail business that appellant was then carrying on at Iron Mountain. We think this evidence was proper to explain the ambiguous exception and to show what the parties had in contemplation by inserting the exception in the contract. It did not vary or contradict any of the terms of the contract, but merely tended to show, in a general way, what the intention of the parties was. It is apparent from the evidence that appellant sold large quantities of lumber in car-load lots that went to various stations other than Iron Mountain and sought to justify such sales by the exception in relation to the Iron Mountain yard. Construing the contract in the light of the surrounding circumstances, it is clear that it was never intended that appellant should have the right, under the exception in regard to the Iron Mountain yard, to sell lumber indiscriminately in car-load lots in other towns and stations under the pretense that such sales were made from the Iron Mountain yard.

Appellant contends that there was a fatal variance between the averments of the declaration and the evidence introduced to sustain them. The alleged variance is supposed to result because the declaration alleges that appellees fully performed the contract on their part, whereas the evidence is that the performance was waived by appellant. This contention, we think, is based on a misapprehension of the effect to be given to the evidence tending to show that appellant refused to go on with the contract. When appellant gave appellees notice that it did not intend to make any further deliveries under the contract, appellees had the right then to treat such notice as a breach and bring their action at once, and in such case the doctrine of waiver would not be involved. (*Roebling's Sons' Co.* v. *Lock Stitch Fence Co.* 130 Ill. 660.) Where one party

to an executory contract repudiates the same and by his conduct induces the other party to believe that he has withdrawn from the contract, the latter may act on such declaration without waiting for the day of performance. (*Collins Ice Cream Co.* v. *Stephens*, 189 Ill. 200.) We fail to see any force in appellant's contention on this point.

Appellant's contention that the damages are excessive presents a question which cannot be considered by this court.

Finding no reversible error in the record the judgment of the Appellate Court for the First District is affirmed.

*Judgment affirmed.*

CARTWRIGHT and DUNN, JJ., dissenting.