### Arthur G. Haines, Appellant, v. State Board of Agriculture, Appellee.

1. MUNICIPAL CORPORATIONS, § 948*—*liability for acts of officers and employes.* Quasi corporations, such as counties, towns, school districts, hospitals and other institutions of like character, cannot be held responsible in damages for the negligence of their officers or employes, unless by statutory enactment.

2. AGRICULTURE, § 3*—*when State Board of Agriculture not liable for personal injuries sustained by guest at State fair.* In an action against the State Board of Agriculture to recover for injuries sustained by plaintiff on account of the collapse of certain bleachers at the State fair conducted by defendant, a general demurrer to the declaration *held* properly sustained, the defendant not being liable for the negligence of its officers and employes.

3. AGRICULTURE, § 3*—*Liability of State Board of Agriculture for negligence of officers and employes.* State Board of Agriculture is one branch or arm of the State government, and though the statute creating it provides it may sue and be sued, it is not liable for the negligence of its officers and employes.

Appeal from the Circuit Court of Sangamon county; the Hon. JAMES A. CREIGHTON, Judge, presiding. Heard in this court at the April term, 1913. Affirmed. Opinion filed October 16, 1913.

SMITH & FRIEDMEYER, for appellant.

SIDNEY S. BREESE and SEDDON & HOLLAND, for appellee.

MR. JUSTICE CREIGHTON delivered the opinion of the court.

This was an action on the case brought by the appellant against the appellee, in the Circuit Court of Sangamon county, to recover for a personal injury alleged to have been sustained by the appellant through the collapse of certain bleachers at the State fair held in Springfield, in the year 1911, and which bleachers were alleged to have been negligently constructed.

The declaration alleges that the Illinois State Board of Agriculture is an association authorized by the laws of the State of Illinois to act in a corporate capacity for the purpose of holding an annual State fair at Springfield, and authorized to hold and acquire property and make improvements thereon, and arrange for exhibits at such State fair, and which was carried on by annual appropriations made by the legislature of the State, in addition to profits derived from the holding of said fair by way of admission fees and the sale of concessions; that the said Board of Agriculture held a State fair at Springfield from September 28 to October 7, 1911, and charged and collected admission fees of fifty cents for each person admitted, and was then and there, in its corporate capacity, in possession and control of the State fair grounds, and erected certain seats, commonly called bleachers, along and near the race tracks located upon said land, for the use and accommodation of the public; that the plaintiff, on the 4th day of October, 1911, attended the said fair, so held, as a visitor and paid an admission fee of fifty cents; that certain races were scheduled to take place on said tracks, and persons desirous of seeing the races were invited to take seats on said bleachers; that the plaintiff got upon said bleachers, together with a large

number of other people, to watch the said races, not knowing the said bleachers were unsafe, and while in the exercise of reasonable care for his own safety, the section upon which he was seated suddenly fell to the ground and injured the back and spine of the plaintiff, etc.

A general demurrer was filed to the declaration, and was, by the court, sustained. Plaintiff elected to stand by the declaration, whereupon judgment was entered in favor of the defendant and against the plaintiff for the costs of the proceeding. Thereupon this appeal was prayed, granted and perfected, bringing the record before us for review.

Section 1 of the act of the legislature creating the Agricultural Department is, in part, as follows: There is hereby created and established a department in the State, to be known and styled the "Department of Agriculture," the object of which shall be to promote agriculture, horticulture, manufacturing and domestic arts. The business of such department shall be conducted by a board, to be styled the "State Board of Agriculture."

The second section of the act provides that said State Board of Agriculture shall have the sole control of the affairs of the Department of Agriculture of the State fairs, etc., and may make such by-laws and rules for the management of the department as shall be deemed necessary.

Section 4 of the act provides that whatever money shall from time to time be appropriated to the Department of Agriculture shall be paid to the State Board of Agriculture, and may be expended by them as in the opinion of said board will best advance the interests of agriculture, horticulture, manufactures and domestic arts in this State.

Section 8 provides for annual reports to the Governor of the transactions of the Department of Agriculture.

From the statute above referred to we may reason-

ably conclude that the Department of Agriculture was . created and has been continued as a department of the government of the State, possessing certain powers granted by the legislature and owing certain duties, defined by the legislature, to the public at large, and particularly those branches of industry specified as agriculture, horticulture, manufacturing and domestic arts. These four branches are to receive special consideration, and any moneys remaining after the necessary expenses of administering the affairs of the department have been met must be devoted to the advancement of those four industries. Thus it will be seen there was no profit contemplated by the legislature of the State, to the State or to the officers of the department.

But it is contended by the appellant that the act creating the Department of Agriculture provides in terms that it may sue and be sued in any court of competent jurisdiction, and that hereby it places the department in the class of corporations organized for profit.

We conclude the legislature meant to grant the usual and ordinary power to transact the necessary business incidental to the administration of the department. It, in the course of administering the affairs of the department, has power to contract debts, and when contracted to enforce them in courts of competent jurisdiction, and if it failed to meet its obligations, it might be sued and recovery had, but this does not necessarily imply that it shall be held liable for the negligence of its officers and employes.

A county or a town may contract debts and may be sued in any court of competent jurisdiction, and yet the authorities are abundant holding that they are not liable for personal injuries by reason of the negligence of their employes.

The true rule controlling the question at issue in this case is clearly stated in the case of *Kinnare v. City of Chicago,* 171 Ill. 332, as follows: ''It therefore

appears the appellee board is a corporation or *quasi* corporation created, *nolens volens,* by the general law of the State to aid in the administration of the State government, and charged, as such, with duties purely governmental in character. It owns no property, has no private corporate interests, and derives no special benefits from its corporate acts. It is simply an agency of the State, having existence for the sole purpose of performing certain duties, deemed necessary to the maintenance of an 'efficient system of free schools' within the particular locality of its jurisdiction. The State acts in its sovereign capacity, and does not submit its action to the judgment of courts and is not liable for the torts or negligence of its agents, and a corporation created by the State as a mere agency for the more efficient exercise of governmental functions is likewise exempted from the obligation to respond in damages, as master, for negligent acts of its servants to the same extent as is the State itself, unless such liability is expressly provided by the statute creating such agency.''

In discussing this same subject, the same rule was clearly announced in the case of *Elmore v. Drainage Commissioners,* 135 Ill. 269, in the following language: ''In regard to public involuntary *quasi* corporations the rule is otherwise, and there is no such implied liability imposed upon them. These latter—such as counties, townships, school districts, road districts, and other similar *quasi* corporations—exist under general laws of the State, which apportion its territory into local subdivisions, for the purposes of civil and governmental administration, and impose upon the people residing in said several subdivisions, precise and limited public duties, and clothe them with restricted corporate functions, co-extensive with the duties devolving upon them. In such organizations the duties, and their correlative powers, are assumed *in invitum,* and there is no responsibility to respond in damages,

in a civil action, for neglect in the performance of duties, unless such action is given by statute.''

The doctrine announced in the above authorities is in perfect accord with the earlier decisions of our Supreme Court, with one exception, which is fully explained in later decisions. See also 15 Am. & Eng. Encyc. of Law, p. 1164, and 2 Dillon on Mun. Corp. p. 1193.

From the above cited authorities it is apparent that *quasi* corporations, such as counties, towns, school districts, hospitals and other such institutions of like character, cannot be held responsible in damages for the negligence of their officers or employes, unless by statutory enactment. They have long been held as involuntary organizations and as agencies of the State for the performance of duties for which they are organized.

In our view, the same principle of law will apply to the appellee, Department of Agriculture. It is not a corporation for profit or special benefit to any particular individuals. The Board of Agriculture, in theory of law, has no individual interest in the appropriations or profits of the department. They are simply the agents of the State, charged with the responsibility of administering the affairs of the Department of Agriculture.

While it is true they receive appropriations made for the benefit of the said department, and it is equally true that there is a sum of money arising from the admission fees and concessions at the annual State fair, yet these various sums are accounted for, and are used for the sole and only purpose of defraying the expenses of the Agricultural Department and advancing the interests of agriculture, horticulture, manufacturing and domestic arts. Every dollar received must be accounted for and reported to the Governor of the State.

This department, therefore, is one branch or arm of the State government. It was brought into existence

by the legislature of the State, it is supported by the provisions of the laws of the State, its servants and agents are but representing a department of the State in the discharge of their duties under the statute, and the State has power to abolish this department, while the Board of Agriculture has no power to either create or destroy. They can only serve the public in the way pointed out by statute.

Appellant has submitted a long list of authorities from sister States, which are not in accord with the view here announced, neither are they in accord with the holdings of our Supreme Court.

For the reasons above given the judgment appealed from is affirmed.

*Affirmed.*