586    APPELLATE COURTS OF ILLINOIS.

Lincoln Mining Co. v. Board of Education, 212 Ill. App. 586.

## Lincoln Mining Company, Appellee, v. Board of Education of the State of Illinois, Appellant.

1. COLLEGES AND UNIVERSITIES, § 3*—*what is nature of Board of Education of State of Illinois.* The Board of Education of the State of Illinois is a private corporation created in the year 1856 by "An Act for the establishment and maintenance of a Normal University" (J. & A. ¶¶ 10419-10431).

2. SALES, § 20a*—*when contract to furnish coal as required is binding.* A contract to furnish as much coal as may be needed, required, or consumed by the acceptor during a limited time, is binding.

3. SALES, § 15*—*when contract void for want of mutuality.* A contract to furnish such coal as the acceptor might want or desire in his business is void for want of mutuality, since he is not bound to want or desire any coal.

4. SALES, § 72*—*when parol evidence is admissible to ascertain subject-matter of contract and meaning of particular term.* Where a contract for the sale of coal is not as plain and explicit as it might be, in order to determine whether it is a contract for the season's supply or for "about 2,000 tons," previous and contemporary transactions and facts may be taken into consideration to ascertain the subject-matter of the contract and the sense in which the parties used particular terms, but not to alter or modify the plain language thereof.

5. SALES, § 65*—*when contract for coal construed as one for season's supply at fixed price.* A contract for the purchase of "about 2,000 tons" of coal for a year ending on a certain date must be construed as one for the season's supply at the price fixed in the contract, where a similar contract was entered into the year before and sufficient coal to meet the season's requirements at the price fixed in the contract was delivered, although the amount delivered exceeded the exact amount referred to in the contract.

Appeal from the Circuit Court of McLean county; the Hon. SAIN WELTY, Judge, presiding. Heard in this court at the April term, 1918. Reversed. Opinion filed October 22, 1918.

**Statement by the Court.** This cause was submitted to the Circuit Court on an agreed statement of facts under the provisions of section 103, ch. 110,

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

Hurd's Rev. St. 1917 (J. & A. ¶ 8640). The Circuit Court gave the Lincoln Mining Company judgment for $993.86, and the defendant appealed to this court.

The facts appearing from the stipulation are as follows: Pursuant to a call by the defendant for bids, the plaintiff, on the 15th day of August, 1916, submitted the following bid, viz.:

"Lincoln, Ill., Aug. 15th, 1916.
"Mr. Chas. L. Capen,
    Pres. State Board of Education,
        Bloomington, Ill.
"Dear Sir:
"We propose to furnish the Illinois State Normal University, at Normal, Illinois, for the year ending August 31st, 1917, coal as follows:
"About 2,000 tons screenings at $1.68 per ton,
        100 tons of Lump at $2.23 per ton, or
        100 tons Mine Run (the kind of coal we have furnished you the past year) at $2.03 per ton, all above delivered to the boiler house of the above institution at Normal, Ill., institution weights to govern settlements.
                    Yours very truly,
                    Lincoln Mining Company,
                        B. H. Armstrong,
                                Gen. Mgr."

The bid of the Lincoln Mining Company was accepted by defendant, the acceptance being in the form of a letter as follows, viz.:

"Normal, Ill., Aug. 15, 1916.
"Lincoln Mining Co.,
    Lincoln, Ill.
"Gentlemen:
"You are awarded the contract for furnishing coal for this institution for the year ending August 31, 1917, at the following prices per your bid of August 15:
"About 2,000 tons of screenings at $1.68 per ton.
"About 100 tons lump coal at $2.23 per ton.
"We would like to have a car of screenings shipped right away, as we are just about out of coal.
                    Yours very truly,
                        David Felmley."

588        Appellate Courts of Illinois.

Lincoln Mining Co. v. Board of Education, 212 Ill. App. 586.

The plaintiff furnished the defendant coal under said contract from the 17th day of August, 1916, to the 7th day of February, 1917, inclusive, the quantity of coal furnished during said period of time being 2,189 tons; that said quantity of coal was to be paid for at the price stipulated in said contract, viz.: $1.68 per ton.

After the delivery of the above quantity of coal the plaintiff on the 3rd day of February, 1917, sent the defendant the following letter:

"Lincoln, Ill., Feb. 3rd, 1917.

"David Felmley, Pres.

   Illinois State Normal Univ.,

      Normal, Ill.

"Dear Sir:

"We have delivered and now have in transit to you more than 2,000 tons as called for in the contract.

"We are willing to follow the usual practice and allow 10% over after which it will be necessary to make other arrangements.

"To make the 10% over it will be necessary that we ship you two more cars after today.

Yours truly,

Lincoln Mining Company,

B. H. Armstrong,

Gen. Mgr."

To which letter the defendant, by its president, David Felmley, replied as follows:

"Normal, Ill., Feb. 5, 1917.

"Lincoln Mining Co.,

   Lincoln, Ill.

"Gentlemen:

"The proposition that you made to us on August 15 for furnishing coal for the Normal University reads as follows:

" 'We propose to furnish the Illinois State Normal University, at Normal, Ill., for the year ending August 31st, 1917, coal as follows:

" 'About 2,000 tons screenings at $1.68 per ton.

         100 tons lump at $2.23 per ton.

         100 tons mine run (the kind of coal we have furnished you the past year) at $2.03 per ton, all

delivered to the boiler house of the above institution at Normal, Ill., institution weights to govern settlements.'

"It was our intention to make, as we have done, a contract for the year. The estimate as to the amount of coal needed has been the same estimate that we have made for the last three years, that is, so long as we have had our present buildings. We expected that our water tube boilers would prove more efficient and consequently would need less coal. In this we were disappointed.

"Now if this contract really means that you are to furnish the amount of coal named and not our coal supply for the year we, of course, shall abide by the contract, altho we supposed we were making the contract for the full year. At all events we want you to keep us supplied with coal until further notice and if our contract does not cover the additional shipments we shall pay the current market price from day to day until some other arrangement is made.

Yours very truly,<br>David Felmley."

February 3, 1917, the plaintiff delivered to the defendant certain quantities of coal, aggregating 993.86 tons, the date of the last delivery being one carload on June 1, 1917, and it is contended by plaintiff that under the terms and provisions of the contract plaintiff was under no legal obligation to deliver any coal in addition to or excess of the amount delivered previous to February 3, 1917, and that under a legal construction of the contract the coal delivered after February 3, 1917, should be paid for by the defendant entirely independent of the provisions of the contract and at the prevailing market price of coal upon the respective dates of delivery after February 3, 1917, the prevailing market price of which is stipulated to be $2.68 per ton.

The contention of the defendant is that under the terms and provisions of the contract the plaintiff was required to furnish to the defendant the entire quantity of coal which the defendant would require for the en-

590     APPELLATE COURTS OF ILLINOIS.

Lincoln Mining Co. v. Board of Education, 212 Ill. App. 586.

tire contract period at the rates per ton mentioned in said contract.

If, upon a construction of the contract, the court determines that the quantity of coal was limited to "about 2,000 tons" and that the coal delivered previous to February 3, 1917, fulfilled the contract, judgment is to be entered for plaintiff for $993.86; but if the court shall determine that the quantity of coal to be delivered was unlimited and the plaintiff was bound to deliver all the coal that the defendant might require during the period of time covered by the contract, then the judgment is to be for the defendant.

Subject to objections for competency and relevancy and all objections that might be urged to its admissibility, it was stipulated that the following contract was entered into between the plaintiff and defendant for the year 1915-16, consisting of the following correspondence, viz.:

"Lincoln, Illinois, August 11, 1915.
"Charles L. Capen,
    President Board of Education,
        Bloomington, Ill.
"Dear Sir:

"We are pleased to name you the following prices for coal for the use of the Illinois State Normal University at Normal, Ill.:

"Mine run coal delivered your boiler house at University, $1.95 per ton.

"Screenings coal delivered your boiler house at the University, $1.53 per ton.

"This proposal is based on your estimate of approximately 2,000 tons, the mine run to be delivered into the old plant or the one now in use and the screenings to the new plant on its completion, which we understand to be about the holiday period.

Respectfully submitted,
    Lincoln Mining Company,
        B. H. Armstrong,
            Gen. Mgr."

"Normal, Illinois, August 20, 1915.
"Lincoln Mining Co.,
    Lincoln, Ill.
"Gentlemen:
    "I write to state that you have been awarded the contract for furnishing the coal supply for the coming year to the Illinois State Normal University, mine run coal at $1.95 per ton, and screenings $1.53 per ton, to be delivered as needed, in the old and new boiler houses on the grounds of the Illinois State Normal University. A contract will be sent you later for your signature.

Yours very truly,

David Felmley."

And that under said contract plaintiff furnished defendant for the year 1915-16, 2,336 tons coal at the prices stipulated in the contract.

Edward J. Brundage and Clarence N. Boord, for appellant; O'Connell & Dolan, of counsel.

James E. Miller, for appellee; David H. Harts, Jr., of counsel.

Mr. Justice Waggoner delivered the opinion of the court.

The defendant is a private corporation created in the year 1856 by "An Act for the establishment and maintenance of a Normal University." Jones & Addington's Illinois Statutes Annotated, vol. 5, ch. 122, pars. 10419-10431; *Board of Education of State of Illinois v. Bakewell,* 122 Ill. 339; *Board of Trustees of University of Illinois v. Bruner,* 175 Ill. 307; *Haines v. State Board of Agriculture,* 184 Ill. App. 191; *Minear v. State Board of Agriculture,* 259 Ill. 549.

A contract to furnish such coal as may be needed, required or consumed by the acceptor during a limited time is binding. Such a contract is to be distinguished from one to furnish such coal as the acceptor might want or desire in his business, because he is not bound

to want or desire any, and such contract is void for want of mutuality. *Higbie v. Rust,* 211 Ill. 333; *Cold Blast Transp. Co. v. Kansas City Bolt & Nut Co.,* 114 Fed. 77. Contracts for the purchase of the season's supply of coal are not unusual nor uncommon and are valid. *Minnesota Lumber Co. v. Whitebreast Coal Co.,* 160 Ill. 85 (95); *Consolidated Coal Co. of St. Louis v. Block & Hartman Smelting Co.,* 53 Ill. App. 565 (573); *National Furnace Co. v. Keystone Mfg. Co.,* 110 Ill. 427 (433, 434); *Sage v. W. H. Purcell Co.,* 90 Ill. App. 160.

Is this contract for the season's supply of coal for the year ending August 31, 1917, or is it for "about 2,000 tons"? The contract is not as plain and explicit as could be asked. Under such circumstances previous and contemporary transactions and facts may be very properly taken into consideration to ascertain the subject-matter of a contract and the sense in which the parties may have used particular terms, but not to alter or modify the plain language used. *Brawley v. United States,* 96 U. S. 168 (173); *Chicago Auditorium Ass'n v. Corporation of Fine Arts Bldg.,* 244 Ill. 532, and note in 18 Ann. Cas. 257; *McLean County Coal Co. v. City of Bloomington,* 234 Ill. 90 (96, 97); *Chicago Title & Trust Co. v. Sagola Lumber Co.,* 242 Ill. 468 (475, 476).

The most reasonable explanation for the use of the words "about 2,000 tons" is that this is a contract for the season's supply of coal, and the words quoted are the estimate of the season's requirements. We believe that in view of all the surrounding circumstances and the previous transactions which this court considers, not for the purpose of altering or modifying the plain language of the contract, but of ascertaining the subject-matter of it, and in order that this court may put itself in the same position the parties occupied at the time they made the contract, the contract should be construed as being for the season's supply of coal for the year ending August 31, 1917, and that the plain-

tiff was required to furnish and the defendant to take its season's supply of coal at the price fixed in the contract. *Brawley v. United States,* 96 U. S. 169 (172); Benjamin on Sales (7th Ed.), secs. 691, 692; note 12 Ann. Cas. 294-296.

Under the stipulation of facts made in this case, the appellee is not entitled to recover. Judgment is reversed.

*Reversed.*