## MARX v. AMERICAN MALTING CO.

(Circuit Court of Appeals, Sixth Circuit. April 19, 1909.)

### No. 1,883.

1. SALES (§ 71*)—VALIDITY OF CONTRACT—CERTAINTY AS TO QUANTITY.

Contracts for the supply of the material required for use in a certain business for a certain time limited are sufficiently certain as to quantity and are valid.

[Ed. Note.—For other cases, see Sales, Dec. Dig. § 71.*]

2. CONTRACTS (§ 169*)—CONSTRUCTION—EXTRINSIC CIRCUMSTANCES.

Where a written contract is ambiguous or contains provisions which may be conflicting, extrinsic evidence is admissible to show the surrounding conditions and circumstances, in the light of which the parties made it, to aid in its construction.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. § 752; Dec. Dig. § 169.*]

3. SALES (§ 71*)—CONSTRUCTION OF CONTRACT—QUANTITY.

A written memorandum of a sale of malt to a brewing company was made on November 12, 1906, on an order blank furnished by the seller, and contained the following items: "Quantity. All their requirements to December 31, 1907," and at the bottom: "Amount of malt to be used will be between 15,000 and 20,000 bushels." The buyer had previously used from 15,000 to 20,000 bushels per year, but was then building an addition to its plant which would considerably increase its requirements, as was known by both parties. *Held*, that the contract was for the sale of whatever quantity the purchaser should require in its business, the statement of the number of bushels being merely an estimate of the probable amount.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 189–196; Dec. Dig. § 71.*]

In Error to the Circuit Court of the United States for the Eastern District of Michigan.

A. P. Cox, for plaintiff in error.

O. B. Taylor, for defendant in error.

Before LURTON and SEVERENS, Circuit Judges, and TAYLER, District Judge.

SEVERENS, Circuit Judge. This is an action brought by the defendant in error, which was plaintiff below and will be so designated in this opinion, against the plaintiff in error, to be designated "the defendant," to recover the price and value of a quantity of malt alleged to have been sold and delivered by the plaintiff to the defendant at a certain stated price per bushel. The defendant, admitting his liability upon the cause of action stated in the declaration, nevertheless set up a counterclaim arising from a breach by the plaintiff of the stipulations of the contract under which the malt had been sold and delivered to him, demanded that the damages resulting to him thereby be recouped and set off against the plaintiff's demand to the extent thereof, and that for the balance he be given judgment. The contract of sale was partly printed and partly written upon an order blank such as used by

the plaintiff in its business, and, as the evidence tended to show, was filled up by it for execution. It was as follows:

"American Malting Company,
"Memorandum of Sale.
"Dated, Detroit, Mich., November 12, '06.

"Sold to Frank Marx Brewing Co.
"P. O. Address, Wyandotte, Mich.
"Quantity, all their requirements to December 31, 1907.
"Quality, standard malt.
"Price, fifty-eight cents per bushel.
"F. O. B. Detroit.
"Terms of payment, cash 3 mos. net from date of bill.
"When to be shipped, all to be taken by December 31, 1907.
"In bags.
"The bags when empty, to be bundled and returned to Detroit branch.
"Shipping directions; via, rail or boat.
"Remarks, If malt is taken in car lots from Detroit, same will be delivered f. o. b. cars Wyandotte at 58 cents per bushel.
"Amount of malt to be used will be between 15,000 and 20,000 bushels.

"American Malting Company,
"Per F. B. Northwood, Seller.
"Correct:                    Frank Mark Brewing Company,
"Per F. Marx, Purchaser.

"No privilege, option or refusal on an additional quantity will be recognized unless special and definite mention thereof is made on this order blank."

The original contract was exhibited at the hearing, but it is not difficult to distinguish the printed skeleton from the special matter written in. The construction of this agreement is admitted to be the essential matter in controversy. Upon the trial it was shown that 20,000 bushels of the malt had been delivered; but that more than this was required for the defendant's business before the end of the year, and that the plaintiff had refused to deliver more, and this upon the ground that its obligation was by the contract limited to 20,000 bushels. The market price had materially advanced during the year 1907, and the defendant had been obliged by the exigencies of his business to purchase elsewhere a considerable quantity of malt and at a higher price. It was shown that in recent years before the date of the contract the requirements of the defendant's business had been from 15,000 to 20,000 bushels; but it was further shown that at that date the defendant had erected and nearly completed extensive additions to its plant, which was intended to be used during the coming year, and that the requirements for malt would be likely to much exceed 20,000 bushels, and that the plaintiff understood these facts at the time of making the contract. The court, accepting the construction put upon the contract by the plaintiff in respect to the quantity it was bound to deliver as correct, held that it had fulfilled its obligation, and excluded all evidence offered by the plaintiff in support of his counterclaim. The plaintiff's claim being admitted, the court instructed the jury to find a verdict for the plaintiff for the amount thereof. The jury found a verdict accordingly, and a judgment was entered thereon.

We think the court was in error. Contracts for the supply of the material to be used in a certain business for a certain time limited, or

for the purchase of the entire output of a certain plant or manufactory, for a certain time or season, are valid; this specification of the quantity contemplated by the parties is held to be sufficiently certain; that the certainty can be ascertained from the means to be supplied by the future exercise of the business in good faith and in the normal manner of such business. As this is a commercial transaction, we need go no further than to cite authorities from the federal courts. Brawley v. United States, 96 U. S. 168, 24 L. Ed. 622; Loudenbeck Fertilizer Co. v. Tennessee Phosphate Co., 121 Fed. 298, 58 C. C. A. 220, 61 L. R. A. 402; Lima Locomotive, etc., Co. v. National Steel, etc., Co., 155 Fed. 77, 83 C. C. A. 593, 11 L. R. A. (N. S.) 713; Inman Bros. v. Dudley & Daniels Lumber Co., 146 Fed. 449, 76 C. C. A. 659.

Coming to the construction of the contract, we are of opinion that, in respect to the quantity of the malt contracted for, the dominating specification is found in the words, "All their requirements to December 31, 1907," and that the words below, "Amount of malt to be used will be between 15,000 and 20,000 bushels," are a mere estimate of the probable requirement intended by the seller as a memorandum to be considered as advisory in the conduct of its own business, or possibly an assurance that the purchaser would want at least that quantity.

There are several reasons for this conclusion. In the first place, it seems improbable that the vendee, evidently contemplating the enlargement of his business and then making provision for it would have limited himself while contracting for his requirements for the ensuing year to the requirements of his old business. Nor could the vendor have supposed that the old limits would be adequate to the new conditions. So far as appears there was no reason why the vendor should desire such a limitation. The words of the sentence are themselves indefinite and seem to indicate that they were employed as rather a negligible expression than as a substantive term of the contract. Then, again, it is a fundamental rule in the interpretation of agreements that we should ascertain the prime object and purpose of the parties, and, in case of ambiguity produced by its minor provisions, the latter should, if possible, be so construed as not to conflict with the main purpose. It is clear enough that these parties had in mind, not the sale of a certain number of bushels of malt, but so much as the business of the vendee would require during the period mentioned. And the rule just stated would require that the particular language upon which the vendor relies should, if possible, be held to be the expression of an estimate merely of the probable requirements. And we think it is easily possible to give the language that construction. In many cases a more stringent rule has been laid down, which is that, if the minor provision of the contract is irreconcilable with the obvious general intent, it would for that reason be sacrificed altogether for the promotion of the general purpose of the agreement. Another reason for adopting a more harmless meaning to this language than one which should defeat the main purpose is that the instrument was prepared by the vendor, and the rule is that, in case of doubt or ambiguity arising from the use of words, they should be construed most favorably to the other party.

But the court below took another view of the stipulations of this contract, and held that the words, "Amount of malt to be used will be between 15,000 and 20,000 bushels," constituted a limitation upon the words, "Quantity, all their requirements to December 31, 1907." Accordingly all evidence given or offered to show the conditions and circumstances in which the contract was made, and in reference to which the parties were dealing, was, either directly or by the effect of instructions, put aside. There could be no complaint of this if the view which the court took of the contract was correct. The evidence referred to, however, was for the information of the court, and to enable it to rightly construe the agreement; and the effect of the ruling was to say that the language was clear and no aid was needed to interpret it. As we have said, we reach a different conclusion. We think such evidence was competent for the purpose for which it was offered. It was not disputed, and it disclosed highly important facts in aid of the right construction of the agreement. We do not say that all of the evidence offered was admissible for this purpose. Mere words passing from one to another of the parties about matters which were subsequently reduced to writing were not admissible to alter, cut down, or enlarge the terms of the contract; but whatever had reference to the conditions and the probable requirements of the business which the vendee expected, and the knowledge of these conditions and expectations by the respective parties, was admissible. Within the rule, we think it was competent to prove by parol evidence that the vendor was informed of the conditions of the vendee's business and of the enlargement of the plant, and of the probable increase of the requirements resulting therefrom. Runkle v. Burnham, 153 U. S. 216, 224, 14 Sup. Ct. 837, 38 L. Ed. 694; Scott v. United States, 12 Wall. 443, 20 L. Ed. 438; Bell v. Bruen, 1 How. 169, 11 L. Ed. 89; Nash v. Towne, 5 Wall. 689, 699, 18 L. Ed. 527; 9 Cyc. 587, where it is said:

"To determine the intention of the parties, if the meaning is not clear, it is necessary that regard shall be had to the nature of the instrument itself, the condition of the parties executing it, and the objects which they had in view, for which purpose parol evidence is admissible."

Such parol testimony is not directed to the written agreement of the parties, but simply and only to prove that the conditions and expectations existed, and that the parties were informed of them. This, we think, is all we need to say concerning the assignment of error relating to this subject.

The judgment must be reversed, with costs, and a new trial awarded.