## SMOOT v. UNITED STATES.

### APPEAL FROM THE COURT OF CLAIMS.

No. 208.   Argued March 18, 19, 1915.—Decided April 5, 1915.

A letter from the Government engineer in charge to a contractor, who had, under written contract with the United States, agreed to furnish a specified amount of material at a specified price, that a larger amount of material would probably be required, *held* in this case not to be a contract for the additional amount or a modification of the original contract.

As a general rule, specific or individual marks and figures control generic ones; and there is an analogy between the control of specific figures over estimates and that of monuments over distances. *Brawley* v. *United States*, 96 U. S. 168.

*Smoot* v. *United States*, 48 Ct. Cl. 427, affirmed.

The facts, which involve a claim for profits on a contract for sand with the United States for the Washington City Filtration Plant which the United States refused to receive, are stated in the opinion.

*Mr. William G. Johnson* for appellant:

The order of February 17, 1905, is an absolute and unconditional order to supply 151,000 cubic yards of sand between that date and October.

That order is not only an absolute and unconditional order by its terms, but was so intended at the time.

The engineer officer in charge had lawful authority to make the order of February 17, 1905.

The United States is liable to claimant for the anticipated profits on the sand he was not permitted to deliver.

Claimant is entitled to recover for the cost of the new washing and screening plant.

The record contains no finding of fact supporting the conclusion of law disallowing the cost of the new plant.

In support of these contentions, see *Brawley* v. *United States*, 96 U. S. 500; *Bulkley* v. *United States*, 19 Wall. 37; *Parish* v. *United States*, 100 U. S. 500; *United States* v. *Behan*, 18 Ct. Cl. 687; *United States* v. *Behan*, 110 U. S. 338.

*Mr. Assistant Attorney General Thompson* for the United States:

The Government is not liable for the alleged anticipated profits on the additional cubic yards of sand. *Brawley* v. *United States*, 96 U. S. 168; *Watts* v. *Camors*, 115 U. S. 353, 360; *Plumley* v. *United States*, 226 U. S. 545.

The Government is not liable for the cost of the additional washing and screening plant.

MR. JUSTICE HOLMES delivered the opinion of the court.

This is a claim for the profits that would have been realized on sand that the claimant alleges to have been contracted for by the United States but that the United States refused to receive, and for the cost of additional plant alleged to have been provided for the purpose of furnishing the sand. The Court of Claims rejected the claim. 48 Ct. Cl. 427. The facts are as follows:

By a contract approved on April 20, 1903, the claimant undertook to furnish for the Washington filtration plant 140,200 cubic yards, more or less, of filter sand, to be deposited in twenty-nine filter beds, at $2.65 per yard. The contract and specifications showed explicitly that the quantities mentioned were approximate only, and in October, 1904, there was a discussion in the claimant's presence as to the probabilities of an increase over the 140,200 yards to meet shrinkage, which had not been taken into account. The delivery began in August, 1904, but the claimant's progress was not satisfactory to the Government engineers. By January 3, 1905, 15 of the

29 beds were completed and the engineer in charge wrote to the claimant directing him to complete the deliveries in the 15 beds by placing there before May 15, 70,000 yards in addition to 20,936 yards then in place. The claimant replied holding out prospects of performance and saying that he had another plant under way. But on February 17, the total sand in place was 28,231 cubic yards.

On that date the engineer in charge wrote to the claimant saying that he had 'laid down a general program of work to be done during each of the months from now on,' with the following particulars among others:

"February and March....Filter sand, complete
  beds 17, 18, 21, 22.............................19,000 cubic yds.
April....Filter sand, complete 15, 16, 20 about.......18,000 cubic yds.
May....Filter sand, complete 3, 4, 5, begin 1.......21,000 cubic yds.
June....Filter sand, complete 1, 2, 9, 14...........21,000 cubic yds.
July....Filter sand, complete 7, 8, 13, begin 12.....21,000 cubic yds.
August....Filter sand, complete 10, 11, 12, 6.......21,000 cubic yds.
September....Filter sand, complete 25, 26, 27......18,000 cubic yds.
October....Filter sand, complete 28, 29...........12,000 cubic yds.

In the program outlined above the quantity of sand going into each bed has been assumed as 6,000 cubic yards. The depth of sand varies for the different beds but 6,000 yards is about the average. Three and one-half beds has been indicated as a month's work. In some cases 3½ beds will require more than 21,000 cubic yards of sand while in others they will require less. In any case the yardage is the item to which especial attention must be paid, and this should in all cases be equal to that indicated in the program. . . . You are required to take notice that the quantities of work, and, unless otherwise ordered, the locations of the same above scheduled for the several months, will be rigorously exacted as a minimum, and any failure on your part to perform in any month the quantity of work stipulated for that month

will be considered by me as sufficient cause for the exercise" of several stringent rights, to go elsewhere, to annul the contract, &c.

This letter is relied upon by the claimant as a contract making definite the amount that was stated only approximately by the original one. It called for 151,000 yards in addition to the 28,231 yards in place, or in all 179,231, as against the 140,200, more or less, originally mentioned. The actual amount needed after allowing for shrinkage ultimately was fixed by the engineers at about 157,000 cubic yards, but the claimant was not notified until May 29, when he immediately entered a protest. He actually supplied 157,725 yards. The claim is for the net profit upon the 21,506 yards that would have been furnished had the figures of the letter been exact. As to the duplicate plant it is found that it was erected to provide for such increased deliveries per month as were necessary under the claimant's contract. There is no justification in the finding for the attempt to attribute the second plant to the letter of February 17, and therefore so much of the claim may be dismissed. It is not necessary to consider whether the claimant would fall under the general rule that in contracts for sale and delivery the purchaser is not concerned with the steps that his vendor may take in order to enable himself to perform; *United States* v. *O'Brien*, 220 U. S. 321, 327; *Bacon* v. *Parker*, 137 Massachusetts, 309, 311; or rather under *Parish* v. *United States*, 100 U. S. 500. We also pass the question whether complete indemnity is not embraced in the claim for profits. *Noble* v. *Ames Mfg. Co.*, 112 Massachusetts, 492.

The appellant admits that neither claim can be maintained unless the letter quoted bound the United States as an unqualified contract. We agree with the Court of Claims that it neither purported to modify the formal agreement originally made nor had that or any effect upon it. The letter was a spur to a tardy contractor and

a sketch of what was expected, but it said nothing to indicate that the engineer in charge was attempting to affect the agreement made by his superior, if he could have done so, or if, notwithstanding the reasons given by the Court of Claims, the claimant could recover for anything but the work actually done in any event. The obviously dominant measure of the sand to be furnished was what was needed for the filters, and the figures in the letter on their face were the engineer's estimate of what would be needed, not an order for those amounts whether needed or not. *Brawley* v. *United States*, 96 U. S. 168. In that case Mr. Justice Bradley refers to the control of monuments over distances and estimates of quantity, as an analogy. In general, specific or individual marks prevail over generic ones. *Praesentia corporis tollit errorem nominis*. *Watts* v. *Camors*, 115 U. S. 353. *United States* v. *Harvey Steel Co.*, 196 U. S. 310, 318. In *Parish* v. *United States*, 100 U. S. 500, the contract to furnish the ice required at certain points named, for armies that were in the field, manifestly referred to no certain objective standard, but could be made definite only by orders. Here no one could have supposed that the United States undertook to purchase more than was needed for its plant and what was needed only was roughly estimated in round numbers by the engineer, to let the dilatory claimant know what he must be ready to do.

*Judgment affirmed.*

MR. JUSTICE McREYNOLDS took no part in the consideration or decision of this case.