NATIONAL PUB. CO. v. INTERNATIONAL PAPER CO.

(Circuit Court of Appeals, Second Circuit. November 12, 1920.)

No. 11.

1. Contracts ⬤147(2)—Only expressed intention enforced.

It is only the intention of the parties, which the contract itself expresses, that the courts may enforce.

2. Sales ⬤71(4)—Contract construed as requirement contract.

A contract by which defendant agreed to furnish plaintiff with "the entire supply of half-tone newspaper required to print rotogravure supplements * * * during the period of one year, * * * estimated at 400 tons, to be ordered and delivered in installments of approximately ——— tons per month," plaintiff being, at the time it was made, engaged in the business of printing newspaper supplements, and, although not then using rotogravure, intending to install a rotogravure press, as it did soon after, *held* a requirement contract, under which plaintiff was not entitled to demand, nor defendant obligated to supply, 400 tons, without regard to plaintiff's requirements during the year for rotogravure work.

3. Sales ⬤71(4)—Insertion of estimated total does not change requirement contract.

In a contract to supply so much of a commodity as required in the purchaser's business during a specified time, the insertion of an estimated total does not, per se, change the nature of the contract.

Ward, Circuit Judge, dissenting.

In Error to the District Court of the United States for the Southern District of New York.

Action at law by the National Publishing Company against the International Paper Company. Judgment for defendant, and plaintiff brings error. Affirmed.

Action is for breach of a contract in writing, which plaintiff set forth in the complaint according to its supposed legal effect, as follows: That said contract was one "whereby defendant [Paper Company] agreed to sell to plaintiff [Publishing Company], and plaintiff agreed to buy from defendant, 400 tons of half-tone newspaper"; that plaintiff delivered only 83 tons, and refused to deliver the balance, wherefore damages were demanded for the breach thus pleaded.

At trial it appeared without denial that the contract executed December 31, 1915, was that Paper Company would sell and Publishing Company buy "the entire supply of half-tone newspaper required to print rotogravure supplements printed in the city of St. Louis, Mo., during the period of one year beginning February 1, 1916, and ending January 31, 1917, both inclusive, estimated at 400 tons, to be ordered and delivered in installments of approximately —— tons per month." At date of contract Publishing Company had a "regular business," carried on in St. Louis and consisting in "manufacturing comic supplements, magazine sections, and things of that sort for other papers." The company, however, had never used the rotogravure, and was in the act of installing a machine suitable therefor.

Paper under the above contract was demanded and received, but the rotogravure branch of the business did not require as much as 400 tons in a year; indeed, down to October 25, 1916, less than one hundred tons had been demanded, and of that amount more than half was sold, and not used by the vendee. At date last given, Publishing Company demanded delivery of the difference between what had already been received and 400 tons. Refusal of this demand produced the action before us.

It further appeared without contradiction that Paper Company had received all and more of the paper it bargained for than was needed by it for "rotogravure supplements"; that the blank for monthly deliveries in the written contract existed because Publishing Company did not know and could not estimate its wants with sufficient accuracy. to give a definite figure; and that the insistence of October 25, 1916, on further deliveries, was solely for the purpose of selling again on a rapidly rising market.

At the close of evidence, both parties moved for a direction, the court granted defendant's motion, and plaintiff brought this writ.

Walter C. Noyes and Henry Pearlman, both of New York City, for plaintiff in error.

Stetson, Jennings & Russell, of New York City (Theodore Kiendl, Jr., Lee McCanliss, and Frederic W. Girdner, all of New York City, of counsel), for defendant in error.

Before WARD, ROGERS, and HOUGH, Circuit Judges.

HOUGH, Circuit Judge (after stating the facts as above). Plaintiff's position, as defined by pleading, is that the contract before us is one for 400 tons of paper, and every word in it unnecessary to express this thought is mere surplusage. Its position, as outlined by conduct, and never disavowed to our knowledge, is that it was entitled to take as much or as little as it wanted, and whenever it wanted, provided all was demanded within the year, and the total did not exceed 400 tons. But never has plaintiff asserted the writing to be no contract, or (as the phrase is commonly used) a void contract.

[1] The meaning of this written agreement is to be gathered from its simple words. No "secret intention can be imported into contracts whose terms and meanings are plain and unambiguous and do not express" such secret intent; it is only the intention of the parties which the contract itself expresses, that the courts may enforce. Cold Blast, etc., Co. v. Kansas City, etc., Co., 114 Fed. 80, 52 C. C. A. 25, 57 L.

R. A. 696. We can give effect to the intention of the parties "only through the words they employ." Woolsey v. Ryan, 59 Kan. 605, 54 Pac. 664. Nor does this document afford the slightest reason for invoking parol or other extraneous evidence for its explanation, interpretation, modification, or enlargement. Cf. Church v. Proctor, 66 Fed. 240, 13 C. C. A. 426.

[2] If the parties' words mean that Publishing Company was expected to demand what paper it wanted, when and if it wanted the same, up to 400 tons in one year, the contract is open to the fundamental objection noted in Burgess, etc., Co. v. Broomfield, 180 Mass. at page 284, 62 N. E. 367:

> "When the only consideration is one by way of mutual promises, if the plaintiff [vendee] is under no obligation in the matter, there is no consideration for the promise of defendant [vendor], and his promise is nudum pactum."

And the language of Crane v. Crane, 105 Fed. 869, 45 C. C. A. 96, is very apt, for where the so-called contract "leaves it practically optional with the purchaser to increase or diminish his orders with the rise or fall of prices, as may be most to his advantage and the corresponding disadvantage of the seller," it is void for lack of mutuality.

Apart from all other considerations, the contract is not to be voided, except of necessity; "ut res magis valeat," etc., is a good rule, even in respect of private writings. But the same rule works against plaintiff's position as pleaded and avowed in argument; for if the agreement is merely for the sale of 400 tons of paper, why were so many words employed, which the parties must once have thought possessed of meaning, and why are they now to be cast aside?

Yet this document is clearly either what plaintiff says it is, or it is a requirement contract. It is said that it cannot be the latter, because Publishing Company had never made rotogravures, and, as its press was not quite ready at date of contract, there was then no business in being, having any demand for which the paper would be a supply. This is refining too much on the phrase "requirements of a business." Plaintiff had a business appropriate for rotogravure work, in the sense that such enterprise would be a legitimate natural department thereof. If a merchant long dealing in plain cottons concludes to stock also with colored cottons, he would be fully justified in contracting for his "requirements" in colors. His old business furnishes a measure or standard; and the same must be true in this business.

If, as was certainly then thought by its officers, plaintiff had a business with legitimate requirements, the words used plainly import a requirement contract, unless the words "estimated at 400 tons" have taken all meaning out of the rest of the document. It has not hitherto been necessary to consider this point in this circuit. The record in Munson v. Grimwood, 249 Fed. 722, 161 C. C. A. 632, only enabled us to point out that a contract might be for requirements when certain testimony excluded at trial was considered; and Manhattan, etc., Co. v. Richardson, etc., Co., 113 Fed. 923, 51 C. C. A. 553, was a plain requirement contract without estimated limit.

When by formal contract or a series of writings more than one measure of an amount or quantity is given, it is the duty of the court to

ascertain, in Justice Holmes' happy phrase, what is the "obviously dominant measure" to be applied in respect of such amount or quantity. Smoot v. United States, 237 U. S. 42, 35 Sup. Ct. 540, 59 L. Ed. 829. We think that this contract itself furnishes as the dominant measure the quantity Publishing Company's rotogravure business needed during the contract year. That what was needed could not be exactly defined at the year's beginning is the very essence of a requirement contract.

[3] Nor does the insertion of an estimated total change, per se, the nature of the agreement. In Marx v. American, etc., Co., 169 Fed. 582, 95 C. C. A. 80, there was such a total more accurately stated than in the present instance, yet it was held that the vendee was entitled to his requirements, though they exceeded the estimate; while in Tancred v. Steel Co., 15 A. C. 125, the contract was for the steel required in the construction of a great bridge, whereof the "estimated quantity" was an exact number of tons, and it was held that the vendor had thereby secured the right to supply all the steel required for the bridge, though it turned out to be far more than the engineer's estimate. See, also, for numerous citations, Loudenback, etc., Co. v. Tennessee, etc., Co., 121 Fed. 298, 58 C. C. A. 220, 61 L. R. A. 402. The agreement before us, not being void, is a requirement contract, under which plaintiff in error received more than it was entitled to.

The judgment below was right, and is affirmed, with costs.

WARD, Circuit Judge (dissenting). The general rule is that an executory contract of sale must state the quantity of goods to be delivered in order to be binding upon the parties. There is an exception that, where there is an established business, the parties may make a binding contract for the supply of articles necessary to the requirements of that business. This is on the principle that the quantity is not left in the air, but is capable of a more or less reliable estimate. "Certum est quod certum reddi potest." Such a contract is not a mere wish, will, or want contract.

In the language of the contract under consideration there is pure surplusage, whether it be construed as a requirement contract or as a contract for 400 tons of paper with a reasonable variation one way or the other. In the former case the estimate is perfectly useless. Brawley v. United States, 96 U. S. 172, 24 L. Ed. 622; Smoot v. United States, 237 U. S. 42, 35 Sup. Ct. 540, 59 L. Ed. 829; Marx v. Malting Co., 169 Fed. 582, 95 C. C. A. 80. In the latter case the reference to requirement is perfectly useless. Budge v. Smelting Co., 104 Fed. 498, 43 C. C. A. 665; Munson v. Grimwood, 249 Fed. 722, 161 C. C. A. 632.

This contract, executed December 31, 1915, covered a year from February 1, 1916, to January 31, 1917. I think it cannot be regarded as a requirement contract. The adventure was a new one. Although the Publishing Company had published supplements, it had never done so on a rotogravure press. When it made the contract, it had no such press, and did not get one ready to print for some three months after the contract was executed. How much paper would be required depended upon how many orders the company could get for this particu-

lar form of supplement. Of course, any estimate on the part of the Paper Company at the time the contract was executed would have been pure conjecture, and the Publishing Company could come very little nearer. It thought 400 tons would be less than its requirements, and that it would need three rotogravure presses; whereas the event proved that it only used about 83 tons for these supplements, and never needed more than one press.

The Paper Company drew the contract and inserted the quantity as 450 tons, which the Publishing Company before execution changed to 400 tons, saying that, if more were needed, it "would take up the matter with you later." Subsequently the Paper Company wrote, complaining that the Publishing Company had taken but 112 tons, while "the contract is for 400 tons of paper, which is at the rate of 33 tons a month." The Publishing Company wrote that the contract was for 400 tons for the year; no monthly delivery being specified. It appears, therefore, that at the time the contract was executed and for months afterwards the parties treated it as for 400 tons of paper, and not as for the requirements of the Publishing Company's business, whatever they might be. Indeed, not until November did the Paper Company claim that its obligation was to deliver, not 400 tons of paper, but only so much as the rotogravure business of the Publishing Company required.

I think the judgment should be reversed.