Knowles Foundry and Machine Company, Appellant,
v. The National Plate Glass Company, Appellee.

Gen. No. 36,992.

Heard in the second division of this court for the first district at the October term, 1933. Opinion filed May 1, 1934. Rehearing denied and additional opinion filed May 16, 1934.

ECKERT & PETERSON and CHILTON P. WILSON, for appellant.

TAYLOR, MILLER, BUSCH & BOYDEN, for appellee; FRANCIS X. BUSCH, JAMES J. MAGNER and STEPHEN A. MITCHELL, of counsel.

MR. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court.

Plaintiff, Knowles Foundry and Machine Company, sued defendant, National Plate Glass Company, to re-

cover profits it alleged it would have realized if defendant had performed its contract. To plaintiff's amended declaration, as amended, defendant filed a general demurrer which was sustained by the court and, plaintiff electing to abide by its amended declaration, as amended, its suit was dismissed and judgment entered against it for costs.

Plaintiff's amended declaration alleged that May 21, 1929, it entered into the following contract with defendant: (Pertinent portions only are set forth.)

"That: The Knowles Foundry and Machine Company shall supply to the National Plate Glass Company, at their plant in the City of Ottawa, State of Illinois, *their entire requirement of Runner Bars for the Federal Division for a period of two years beginning with the date of first delivery*: That these Runners comprise substantially eliptical plates having lugs on one side to form a grinding face and having three ears on the other side for mounting. That these Runners shall be of Grey Cast Iron. That the grinding face shall be machined to a plane surface. That the ears shall be drilled to one and three-quarter inches bore and have their outer faces machined. That these Runner Bars are of two sizes, the larger being approximately $60\frac{5}{8}''$ in the long diameter and $52\frac{7}{8}''$ in the short diameter; the smaller Runner being approximately $48\frac{1}{2}''$ in the long diameter and $41''$ in the short diameter. That *the requirements above referred to are three large and seven small Runners, or approximately 10,900 pounds a day.*

"That the National Plate Glass Company shall pay to the Knowles Foundry & Machine Company for the above mentioned Runner Bars at the rate of Ninety-Five Dollars per net ton, finished machined castings, F. O. B. cars at the plant of the National Plate Glass Company, Ottawa, Illinois, in carload lots.

"The above price is based on #2 Pig Iron at $20.00 per ton, Chicago, Ill., and is subject to revision each

six months on the same basis, to-wit: If #2 Pig Iron drops to $19.00 the price of Runners shall be $94.00.

"It is further agreed that the Knowles Foundry & Machine Company shall accept the return of scrap from the above Runners at $13.50 per ton.

"It is agreed that delivery of Runners under the above agreement shall begin approximately sixty days from the date hereof." (Italics ours.)

The amended declaration averred that at the time of the execution of the contract defendant had practically completed the erection and construction of its new plant known as the "Federal Division"; that runner bars were a vital and necessary operating requirement of its plant and that plate glass could not be completely manufactured without them; that, upon the execution of the contract, plaintiff enlarged its plant, installed the necessary machinery and purchased the necessary equipment, at a cost of approximately $45,000, for the purpose of creating sufficient capacity to produce, machine and deliver the daily tonnage requirements of defendant as set forth in the contract; that plaintiff did all things that were necessary to supply the material and tonnage as required by defendant in the contract and delivered a large quantity of material in accordance with same; that, after the enlargement of its plant and the installation of the necessary machinery and equipment, it added to its operating personnel preparatory to manufacturing and delivering three large and seven small runner bars daily on and after July 21, 1929, and that it was ready to produce, machine and deliver same on July 21, 1929; that the year, as known in the business and trade of manufacturing glass in which defendant was engaged, consisted of 363 days and a further allowance of not to exceed 30 days for possible shut-down for repairs.

It further alleged that defendant failed and refused to take the material in the quantity and tonnage as specified in the contract, and thereby deprived plaintiff

of the profit which it would have earned had it been allowed to produce and deliver to defendant the quantity of material defendant agreed to take; that, under the terms of the agreement, defendant was to take and pay for approximately 10,900 pounds of the material a day as specified in the contract, delivery to defendant to begin about July 21, 1929; that plaintiff was at all times ready and willing to deliver the material in the specified tonnage, but defendant refused to order from plaintiff and accept deliveries under the contract until on or about October 22, 1929, when it did accept delivery of one carload, and October 31, 1929, when it accepted delivery of another carload; that defendant did not order or take any tonnage for the months of July, August, September, November and December, 1929; and that for the period from July 21, 1929, to December 21, 1929, defendant was delinquent in ordering and accepting delivery of 707.30 tons of runner bars in accordance with the terms of the contract.

It is also alleged that for the year 1930 defendant ordered and accepted delivery of 939.20 tons and failed to order 959.20 tons; that for the seven months ending July 21, 1931, defendant ordered and accepted delivery of 839.72 tons and failed to order 267.68 tons, resulting in a total accumulative delinquency on the part of defendant for the two years covered by the contract of 1,934.18 tons; that, under the terms of the contract, it was entitled to the rate of $95 a ton for the material to be supplied during the life of the contract, subject to adjustment for price changes in the "#2 Pig Iron" market; that it invoiced all material delivered during 1929 and the first seven months of 1930 at $95 a ton, and at the rate of $93 a ton for deliveries made during the months of August and September, 1930, which price change was based on a price reduction in #2 pig iron; that thereafter the material delivered was invoiced at $85 a ton, which price was a special concession and not entirely based on the #2

pig iron market; that if defendant had taken the tonnage specified in the contract, it would have been required to take 3,796.80 tons during the two years ending July 21, 1931, and would have been required to pay plaintiff $344,243.20; that it refused to take 1,934.18 tons as provided in the agreement and pay the agreed price of $178,159.08 therefor; that plaintiff expended a large sum of money and incurred debts in enlarging and equipping its plant to produce, machine and deliver the material specified in the contract in definite quantities daily for the period of two years; and that the failure of defendant to accept and pay for such material in the daily quantity as specified deprived plaintiff of its profits to the extent of $98,168.74.

Plaintiff contends that, under the contract, defendant was required to take and pay for ''three large and seven small Runner Bars or approximately 10,900 pounds a day'' for a period of two years.

Defendant's theory is that the contract entered into by the parties, and set forth in the amended declaration, is a pure requirement contract, and that, inasmuch as the amended declaration and the amendment thereto fail to show that defendant did not take all of its runner requirements from plaintiff, no breach of the contract is alleged.

The question, therefore, is squarely presented as to whether under a proper construction the contract is determined to be for requirements only or for a specific quantity of runner bars daily for two years.

Defendant insists that when the parties stated in the contract that ''The Knowles Foundry and Machine Company shall supply to the National Plate Glass Company . . . *their entire requirement of Runner Bars for the Federal Division for a period of two years beginning with the date of first delivery,*'' they clearly expressed their intention of entering into a pure requirements contract; that, regardless of any

other provisions of the contract, this language was controlling and declared the major measure of its obligation; that these were the "determinative words" of the agreement and stated the "obviously dominant measure" of the quantity of runner bars defendant must order from plaintiff; and that any other reference to the quantity of material covered by the contract is nothing more than an approximation or estimate of its anticipated needs or requirements of runner bars and is entirely subordinate to the above provision.

Plaintiff just as strenuously insists that the subsequent provision *"That the requirements above referred to are three large and seven small Runners or approximately 10,900 pounds a day,"* is controlling and definitely fixes the quantity of "runners" plaintiff was required to manufacture and deliver, and defendant agreed to order, accept and pay for, and that the parties contemplated by the contract to specifically define defendant's requirements over the period embraced by their agreement.

Defendant at various points in its brief, inadvertently, we are satisfied, and with no intention to confuse the issue, uses the word "approximately" in connection with the quantity of runner bars mentioned in the contract. The parties did not use the word "approximately" in connection with the number of bars specified, but only with reference to the size of same and the combined weight of three large and seven small runners.

All of the material allegations of the amended declaration and the amendment thereto that are well pleaded are, of course, admitted by defendant's demurrer. Defendant had under construction near Ottawa, Illinois, a large glass plant costing several million dollars. When it entered into the contract with plaintiff May 21, 1929, it anticipated that its plant would be ready for occupancy and operation in approximately

60 days. Plate glass could not be completely manufactured without runner bars and it was essential that an adequate supply of same be insured for the opening and continued operation of its plant. It is only reasonable to infer that it desired to operate its plant as near to capacity as possible and that its engineers in determining the quantity of runner bars required took into consideration not only defendant's plant capacity, but also the wear and tear on the grinding surfaces of the runners. The number of runner bars needed in its business would necessarily have to be determined by defendant, and in reaching its agreement with plaintiff as to the price of the runners it may also be inferred that the price agreed upon in the contract was based on quantity production and defendant's needs as specified by it.

To be prepared to supply "three large and seven small Runners a day" plaintiff enlarged its plant, purchased additional equipment and machinery and added to its personnel at a cost of approximately $45,000. Some reasons are suggested, but it does not definitely appear in the record why defendant did not order and accept the three large and seven small runners daily.

In many of the authorities cited where "approximately," "about," "more or less," or words of similar import are used, the courts make the pertinent observation that if the parties to the contracts under consideration intended to specify definite quantities it would have been an easy matter for them to have done so. In the instant case, after stating that plaintiff was to furnish defendant with its "entire requirement" of runner bars, the contract specifically and with certainty provided "that the requirements above referred to are three large and seven small runners or approximately 10,900 pounds a day." The word "approximately" appears three times in this contract but it does not appear in connection with the quantity of the product ordered.

It is urged, nevertheless, that the parties intended the definite quantity specified as merely an estimate of defendant's requirements, but under every rule of construction, with which we are familiar, the intention of the parties is to be gleaned from the language used by them and not from their later contentions that they meant something other than what they plainly stated in unmistakable terms. In our opinion the language of this contract is susceptible of only one reasonable construction. We have heretofore stated the respective positions of the parties at the time the contract was executed. Defendant needed certain quantities of plaintiff's manufactured product as calculated, ostensibly, by its engineers. Plaintiff was obliged at great expense to enlarge its facilities to meet its definite obligations under the contract. This is not a case where the contract was loosely or inaptly drawn. The earlier provision "entire requirement" was neither inadvertently nor carelessly overlooked, but appears to have been clearly in the minds of the parties when they specifically defined it with the subsequent dominant quantity provision "that *the requirements above referred to* are three large and seven small Runners . . . a day."

Various rules of construction are called to our attention to enable us to discharge our duty in properly interpreting the language of the contract declared upon. All of these rules are predicated upon the ascertainment of the intention of the parties to the instrument construed. Such intention must be determined from the language employed when read in the light of the context of the instrument, the respective positions of the contracting parties, and such surrounding circumstances as will aid the court in arriving at their true intent and meaning. (*Druecker v. McLaughlin,* 235 Ill. 367; *Goodwillie Co. v. Commonwealth Electric Co.,* 241 Ill. 42; *Geithman v. Eichler,* 265 Ill. 579.)

However, we deem it unnecessary to resort to any rule except the elementary one dictated by common sense and reason, viz., that the parties meant what they said. They said "entire requirements" and then stipulated "the requirements above referred to are three large and seven small Runners . . . a day." No authority has been cited where the court was called upon to construe a contract as one for requirements only because of claimed ambiguity or uncertainty as to its terms where the contract was as definite and certain as to the quantity contracted for as the one in the case at bar.

Where the engagement is to furnish goods of a certain quality or character to a certain amount the quantity specified is material and governs the contract. (*Brawley v. United States,* 96 U. S. 168, 24 L. Ed. 622.) Our attention has been called to no authority and we have been unable to find one after diligent search that declares a contrary doctrine.

A careful study of all the authorities cited by opposing counsel discloses that each was decided in reference to the particular contract involved or, as stated by Mr. Justice Holmes in *Smoot v. United States,* 237 U. S. 38, 59 L. Ed. 829, upon a consideration of the "obviously dominant measure of quantity" in each contract. (*Louisville Soap Co. v. Taylor,* 279 Fed. 470.)

Several pure requirement cases have been cited where there was no other specification as to the quantity to be sold and taken. It is readily apparent that the purchaser under such a contract fulfills its obligation when it takes the amount of the seller's product it needs or requires in its business for the purpose or over the period stated. These cases have no application to the situation presented here.

Defendant in support of its contentions cites a line of cases including *Brawley v. United States, supra;*

*Smoot v. United States, supra; Cragin Products Co. v. Fitch,* 6 F. (2d) 557; *Mathieson Alkali Works v. Virginia Banner Coal Corp.,* 147 Va. 125, 136 S. E. 673; and *Lincoln Mining Co. v. Board of Education,* 212 Ill. App. 586.

The *Brawley* case has been almost universally followed where the contract provided for the purchase of requirements coupled with the qualifying words "approximately," "more or less," or expressions of like import. The contract in that case provided for the furnishing of 880 cords of wood, "more or less, as shall be determined to be necessary by the post commander" of a certain army post. The post commander determined that only 40 cords were needed and refused to take more. The Supreme Court of the United States held that "as shall be determined to be necessary by the post commander" were the determinative words of the contract and the quantity designated, 880 cords "more or less," must be regarded merely as an estimate of what the officer making the contract at the time supposed might be required.

In the *Smoot* case the United States entered into a contract with Smoot whereby he was to furnish 140,200 cu. yds., "more or less," of filter sand to fill certain filter basins. Justice Holmes, in the opinion in this case, held that what sand was needed for the construction of the filtration plant was the "obviously dominant measure" of the sand to be furnished, and that the figures were a mere estimate.

In the *Fitch* case the contract provided for the purchase and sale of "approximately 1800 barrels of . . . alcohol . . . being your estimated consumption of this formula during one year from date. All of your supplies of this formula to be furnished by (seller)." This was held to be a sale of buyer's requirements and not one of absolute sale of 1800 barrels.

In the *Mathiesen Alkali Works* case, the alkali works agreed to buy and pay for, and the coal company agreed to sell and deliver, during the term of 10 years, the annual requirements of coal of the alkali works, "estimated approximately at 200,000 tons a year." The court held that the quantity provision was a "requirement clause" and not a tonnage clause.

In the *Lincoln Mining Co.* case, that company submitted a bid and was awarded a contract to furnish coal to the Illinois State Normal University for the year ending August 31, 1917, "about 2,000 tons of screenings" and "about 100 tons lump coal." This was held to be a requirements contract, the figures being merely an estimate.

In every one of the above cases the contract provided for the furnishing of requirements for a stated period or for a stated purpose, coupled with or followed by an estimate, "about," "approximately," "more or less," or an expression of similar meaning, and the United States Supreme Court and the other reviewing courts deciding those cases, sensibly and reasonably held that the "requirements" clause would have to be regarded as the determinative or dominant measure of the quantity contracted for, and the quantity mentioned as merely an estimate.

There is, however, another class of cases where the contract covers requirements coupled with or followed by a stipulation for a definite minimum and maximum quantity. There is practical unanimity in this class of cases in holding that the definite minimum and maximum quantity specified in the contract dominates and controls the requirement clause, to the extent that the seller is required to deliver to the buyer up to the maximum but not beyond it, and the buyer is required to take at least the minimum whether he needs it in his business or not.

In *Armstrong Paint & Varnish Works v. Continental Can Co.*, 301 Ill. 102, the can company agreed March 11,

1916, to sell, and the paint company agreed to purchase, "a minimum of $2,000 worth of tin packages or more, as required by them (as priced and described) which buyers will need for actual use in their business between the date hereof and April 1, 1917." Prior to February 19, 1917, the paint company ordered, and the can company delivered, $5,937.95 worth of tin packages. During the period covered by the contract the price of tin packages had nearly doubled and in the last seven weeks of the term of the contract the paint company ordered $6,404.75 worth of additional tin packages at the price quoted in the contract, which the can company refused to deliver on the ground that they were not actually needed in the paint company's business. Our Supreme Court held that under the contract the paint company was obliged to accept and pay for at least $2,000 worth of the packages, and the can company was obliged to furnish as many more tin packages as were actually needed in the paint company's business before April 1, 1917, but not in excess of its actual needs.

The contract in *Staver Carriage Co. v. Park Steel Co.*, 220 Ill. 412, provided for "all the tire steel of good and suitable quality which will be used in buyer's works prior to September 1, 1899, not to exceed 14,000 sets nor to be less than 10,000 sets." The carriage company placed orders for the maximum 14,000 tire sets, but the steel company, after delivering 10,600 sets, refused to deliver more, insisting that it had supplied the carriage company's legitimate needs. At p. 416 of its opinion, our Supreme Court said:

"By the contract the defendant was bound to take as much as 10,000 sets whether it could use them in the factory or not, and it was only entitled to 14,000 sets in any event, but between these limits it was the purpose of the contract to enable the defendant to provide a supply of tire steel for its factory and business. The

construction given to the contract by the Appellate Court would require defendant to use up a part or all of the stock on hand at the beginning of the contract and not replace it, and to leave the bins empty when the contract expired. That construction seems to us too narrow and not according to the intention of the parties."

In *Bloomington Canning Co. v. Union Can Co.*, 94 Ill. App. 62, the contract specified: "Your season's requirement of cans, approximately as follows: 2½ million 2 pound cans with 1⅜" opening; ½ million 3 pound cans with 2" opening, etc." The seller delivered 2,872,872 of the small size cans and 475,189 of the larger size. The purchaser sued the seller claiming that this was a pure requirements contract; that the amounts specified meant nothing; that its requirements for the season were 3,389,952 small cans and 762,437 large cans; and that the seller was liable to respond in damages for its failure to deliver the purchaser's full requirements.

It will be noted that the provision of the above contract as to quantity is not nearly as definite as in the contract in the instant case and even "approximately" is used in connection with the designated quantity, but the court in holding that the approximate quantities mentioned in the contract were definite maximums beyond which the can company could not be forced to go used this language at pp. 65 and 67:

"We think the inferences proper to be drawn from the nature and terms of the contract itself, and its subject-matter, are quite sufficient of themselves by which to find the intention of the parties, without the aid of extrinsic proof, and the case therefore rests upon the proper construction of the contract, to be made by inspection of its terms, a consideration of its subject-matter, and the reasonable and natural inferences to be drawn therefrom of the situation and cir-

cumstances surrounding the parties at the time it was made. . . .

"The acceptance of the construction of the contract insisted upon by counsel for appellant, that the phrase, 'your season's requirements of cans' should be taken as the governing words, would result in the rejection of the clauses limiting the number of cans approximately, as surplusage or meaningless. This, we have said, should not be done without a plain necessity, or to prevent a defeat of the objects the contract was designed to attain. If the parties meant by the contract that the season's requirements of cans should alone be determined by the plaintiff at a future time, and the quantity limited by its will, then the added clauses of approximate quantities were superfluous and useless, and the commonest tenets of construction would thus be violated, by rejecting them."

It is urged upon the part of the glass company that if the number of runners specified in this contract should be held to be the measure of the quantity to be furnished thereunder, it would take all of the meaning out of the provision of the contract with reference to that company's "entire requirement." It was not left for us to qualify the requirements provision. Defendant itself did that when it agreed that "the requirements above referred to are three large and seven small Runners . . . a day."

*Marx v. American Malting Co.*, 169 Fed. 582, and many other cases have been cited and discussed in the briefs of the parties on the general subject of requirement contracts. Suffice it to say we have carefully examined and considered all of them, but are of the opinion that a discussion of them would serve no useful purpose and would only further lengthen this opinion. We are constrained to hold that plaintiff's amended declaration, with the amendment thereto, stated a good cause of action on the contract without alleging that

defendant had failed to take its "entire requirement" of runner bars for the two years covered by the contract.

For the reasons indicated the judgment of the superior court is reversed and the cause remanded with directions to overrule defendant's demurrer to plaintiff's amended declaration and the amendment thereto.

*Reversed and remanded with directions.*

GRIDLEY and SCANLAN, JJ., concur.

ADDITIONAL OPINION UPON PETITION FOR REHEARING.

In a petition filed for rehearing in this cause it is suggested that the trial court should not be foreclosed from reaching a conclusion different from that reached by us as to the construction of the contract involved, if such conclusion is reasonably and logically justified by all of the evidence received upon the trial.

Our conclusion is predicated upon the pleadings only, and we are not holding that, upon a trial, evidence may not be presented to show that another and different interpretation was given to the contract by the parties themselves. That question was not presented for our determination on this appeal.

It is urged that this court overlooked or did not grasp the meaning, grammatical effect and the punctuation of the following sentence of the contract: "That the requirements above referred to are three large and seven small runners, *or approximately 10,900 pounds a day.*" Counsel for defendant state that "or" is a "disjunctive conjunction" used "to usher in the second of two alternatives"; that it imports a choice between two alternatives, and, as ordinarily used, means one or the other of two, but not both; that the clause "approximately 10,900 pounds a day" following the disjunctive conjunction "or," modifies the word "requirements," appearing in the same sentence; and that given a proper interpretation defendant had the

right to read the sentence, "the requirements above referred to . . . approximately 10,900 pounds a day."

The construction of this sentence suggested by defendant is forced and strained, and read in the light of the text of the entire contract is not a reasonable one. The significance sought to be attached to the word "or" is illogical and unreasonable. The significance of "or," and the above mentioned clause, must have escaped the attention of and been overlooked by counsel up to now, inasmuch as the petition for rehearing contained the first intimation in this cause that any such interpretation of this clause of the contract was contended for. It has seemed to us, and so continues to seem, that "or approximately 10,900 pounds a day," means and was intended by the parties to mean the estimated weight of three large and seven small runner bars.

After a careful consideration of the petition for a rehearing we are of the opinion that the contentions made therein are without merit, and the petition for a rehearing is denied.

*Petition for rehearing denied.*

GRIDLEY and SCANLAN, JJ., concur.