**UNITED STATES v. OZMER.**

No. 12931.

United States Court of Appeals
Fifth Circuit.

April 28, 1950.

liable thereunder for the alleged underpayments.

On May 26, 1942, the defendant entered into a contract with the War Department whereby he agreed to supply and deliver 310,980 board feet of lumber at a price of $33.75 per thousand feet, the total price being $10,495.58. Shortly after entering into the agreement Ozmer informed the War Department contracting officer over the telephone that the unit price in the Government purchase order would have to be lowered to conform with the OPA ceiling price then in effect. With reference to this conversation, Ozmer testified: "They asked me how soon they could expect me to start shipment, and I told them at the time that the price would have to be adjusted, and he said, 'Well, what is the trouble with the price?' I said 'Well it is above ceiling.' He said 'You can always reduce the price. Just so you don't try to raise it, it is satisfactory with us.'"

After the above telephone conversation, and before any deliveries or shipments of lumber under the contract had been made, Ozmer wrote the contracting officer a letter, dated July 6, 1942, in which he stated: "Due to a lower freight rate, we wish to reduce the price from $33.75 to $31.25 delivered Atlanta General Depot. This will make a total of $9,718.12. Will you please issue a corrected order for the above amount."

On July 10, 1942, the contracting officer replied to the above communication as follows:

"It is requested that rather than making up a new purchase order, you show on your invoices that the lumber has been reduced to conform to ceiling prices.

"The break-down of the price on the invoice should show F. O. B. mill price, original figured freight and actual freight. The invoice will thereupon be paid on the basis of the actual freight.

"The original purchase order is hereby returned to you and should be handled accordingly."

The first shipment of lumber took place on July 8, 1942, and deliveries were completed under the contract on November 30,

Joseph Kovner, Atty., Claims Division, Dept. of Justice, Washington, D. C., J. Ellis Mundy, U. S. Atty., Atlanta, Ga., Herbert A. Ringel, Asst. U. S. Atty., Atlanta, Ga., Beverley R. Worrell, Regional Atty., Dept. of Labor, Birmingham, Ala., for appellant.

Augustine Sams, Atlanta, Ga., for appellee.

Before HUTCHESON, Chief Judge, and McCORD and WALLER, Circuit Judges.

McCORD, Circuit Judge.

This suit was brought by the United States against Joseph W. Ozmer, doing business as Ozmer Lumber Company, for the sum of $1,487.39, this amount being an alleged underpayment of wages to 127 employees of the defendant in violation of the Walsh-Healey Public Contracts Act. Title 41 U.S.C.A. § 35 et seq.

The material facts are practically without dispute. The main question presented is whether the amount of the contract between the Government and the defendant exceeds $10,000, so as to bring it within the coverage of the Act and render the defendant

1942. On June 23, 1943, Ozmer procured from the War Department a "Change Order" noting the variance from the original agreement. After referring to .the terms of the original order, the latter order recited, "Changed. as follows, to conform with ceiling prices." It listed the lumber actually delivered, fixed the total price for all shipments at $9,835.68, and provided that "All other terms and conditions of said contract shall be, and remain the same".

The district court, in a well considered opinion, reversed an administrative determination by the Secretary of Labor to the effect that the contract was for an amount in excess of $10,000, and therefore subject to the provisions of the Walsh-Healey Act. The court held that although the original contract was for an amount in excess of $10,000, that the unit price finally established and agreed upon by the parties reduced the value of the contract below the statutory amount, so as to remove the contract from the coverage of the Act and render its provisions inoperative.

■ Pretermitting the question of whether the Georgia limitation statute is applicable here, we prefer to rest our decision squarely on the statute and well settled contractual principles. The language of the statute is crystal clear to the effect that Congress never intended to regulate the wages and working conditions of employees of a public contractor where the contract was for "any amount not exceeding $10,-000." Moreover, it is hornbook law that "a contract not performed on either side may be discharged by a subsequent oral agreement changing its terms, whereby a new contract is in effect substituted for the old one." American Fine Art Co. v. Simon, 2 Cir., 140 F. 529; Irwin Glass Co. v. Buchanan, 3 Cir., 289 F. 348, 352; Teal v. Bilby, 123 U.S. 572, 8 S.Ct. 239, 31 L.Ed. 263; American Sewer Pipe Co. v. Mathews, 19 Ga.App. 248, 91 S.E. 284.

We find nothing in the Walsh-Healey Act or elsewhere which changes the fundamental law of contracts, or impairs the right of parties to modify or alter the terms of a prior agreement, especially where the admitted purpose in doing so is to comply with the law. Here, it is without dispute that the defendant sought a reduction in the original contract price in order to comply with OPA regulations regulating the ceiling price of lumber. Had he charged and collected from the Government the unit price agreed upon under the original contract, it is quite conceivable that he might have been confronted with a charge and penalty for violating the law. Having sought and obtained a modification of the original agreement on this basis, we think the Government is in no position to complain because he has in good faith attempted to abide by its own regulations.

We consider the cases cited by appellant readily distinguishable under their own facts, and in no wise authority in support of the Government's contention here. Cf. Smoot v. United States, 237 U.S. 38, 41, 35 S.Ct. 540, 59 L.Ed. 829; Whitney v. Wyman, 101 U.S. 392, 396, 25 L.Ed. 1050; Utley v. Donaldson, 94 U.S. 29, 24 L.Ed. 54.

■ It follows that the Walsh-Healey Public Contracts Act did not and does not apply to the contract here under consideration for the reason that the final and controlling amount of the contract agreed upon by the parties did not exceed the sum of $10,000. Furthermore, the provision in the contract allowing for a ten percent overage or underage in loading, shipping, etc., did not cause the contract to exceed the statutory amount, and therefore does not require a different result here.

The judgment is affirmed.