Blaine STOCKTON, et al., Plaintiffs,

v.

HOOVER BALL DIVISION, et al., Defendants.

No. Civ–2–78–221.

United States District Court,
E. D. Tennessee,
Northeastern Division.

June 30, 1980.

Paul J. Sherwood, Erwin, Tenn., and John L. Kiener, Johnson City, Tenn., for plaintiffs.

Fred H. Cagle, W. P. Boone Dougherty, Jerry Becker, Knoxville, Tenn., Robert H. Stropp, Jr., Birmingham, Ala., W. Edward Parrott, Lewis R. Hagood, Knoxville, Tenn., for defendants.

MEMORANDUM OPINION

NEESE, District Judge.

The plaintiffs are former employees of the defendant Hoover Ball Division of Hoover Ball & Bearing Company (Hoover Ball). Each plaintiff retired prior to attaining age of 65 on account of his total and permanent disability. Under the pertinent pension plan,[1] each had qualified for, and has been receiving, "disability retirement" benefits. A controversy developed as to the extent of those benefits which are due each plaintiff and, in order to resolve the difference of opinion, trial was to the Court on February 20–21, 1980.

Involved therein is the matter of construing the pertinent provisions of the pension plan. Out of that instrument arises any

---

1. Actually 3 pension plans are involved; the pertinent language of each is the same for all practical purposes. Accordingly, the Court will refer herein simply to "the pension plan". Specific references herein are to the 1976 plan, which is the latest.

right of the plaintiffs to the benefits they seek herein, and they are " * * * not entitled to any pension benefits either in law or equity that are not given to [them] within the four corners of that instrument. * * " *Smith v. Union Carbide Corporation,* C.A.6th (1965), 350 F.2d 258, 261[4].

Under the terms of the pension plan, an employee who retires from his employment with Hoover Ball after reaching the age of 65, and who has the specified number of years of credited service with the company, is entitled to receive "lifetime"—pension benefits. This is known as "normal retirement". An employee who has the required years of service [2] and who retires from the company on account of his total and permanent disability before attaining the age of 65 years, qualifies for certain "disability retirement" benefits under the plan. Such a disability-retiree is entitled to receive what amounts to a double benefit: he gets the aforementioned lifetime benefit, which is determined as if he had left the company under normal retirement, and, in addition, he receives a "temporary benefit" which is equal in amount to the lifetime benefit. The result is that an employee who retires under a total and permanent disability is entitled to twice the pension benefits that an employee with the same years of credible service would receive on normal retirement at the age of 65. The receipt of the additional temporary benefit is limited in its duration; it continues only " * * * until the disabled pensioner attains age 65 (or, if earlier, the age at which he first qualifies for an unreduced Federal Social Security disability pension, or would qualify if he made proper application therefor) * * * [3]"

**2.** It is undisputed that each plaintiff has the minimum years of service with Hoover Ball to be entitled to disability retirement benefits under the plan.

**3.** Hoover Ball Division of Hoover Ball and Bearing Company Retirement Income Plan, article IV, § 4(f)(4).

**4.** The pension plan has long been interpreted in this manner, and this requirement has been explained fully in the booklets distributed to the employees of Hoover Ball detailing their pension plan.

The language of the pension plan is clear and unequivocal: once the disability-retiree attains the age of 65 years or becomes eligible for disability benefits under the Social Security Act, he is no longer entitled to the additional temporary benefit but may receive only the normal lifetime benefit.[4] Since each of the plaintiffs herein qualified for, and is receiving, an unreduced federal Social Security disability pension, the defendants determined that each was entitled only to the normal benefit.

Despite the unambiguous language of article IV, § 4(f)(4), *supra* of the contract, the plaintiffs claim that they are entitled nonetheless to receive the temporary disability-benefits even though they are receiving disability benefits under the Social Security Act. They contend that another provision of the pension plan precludes any reduction in their benefits on account of their receipt of benefits under the Social Security Act.

They rely specifically on article VI of the plan, which deals with the effect of social legislation on the determination of pension benefits payable. Section 1(a) of that article provides that, in determining the pension payable, a deduction is to be made for certain workmen's compensation and disability benefits payable to the pensioner, but that " * * * Social Security disability benefits shall not be considered in determining this offset * * *." While at first blush this provision would appear wholly inconsistent with the mandate of article IV, § 4(f)(4), *supra,* the pension plan can be construed reasonably so as to find harmony between these two provisions.[5]

**5.** The construction of the pension plan is to be done " * * * under the ordinary rules of contractual construction." Anno: Pension Plan—Rights of Employee, 42 A.L.R.2d 461, 472 § 6. " * * * It is a fundamental rule of contract construction that the entire contract, and each and all of its parts and provisions, must be given meaning, and force and effect, if that can consistently and reasonably be done. An interpretation which gives reasonable meaning to all its provisions will be preferred to one which leaves a portion of the writing useless or inex-

Article IV of the pension plan concerns eligibility for retirement and the amount of pensions paid upon retirement. There are 4 types of retirement provided: normal retirement, early retirement, automatic retirement, and disability retirement—each of which entitles the retiree to certain types of pension benefits depending upon the category of retirement involved. Article VI of the plan deals with certain deductions that are to be made in determining the actual amount of benefits payable to a retiree once the general nature and amount of his benefits have been calculated pursuant to article IV. In other words, the Court is of the opinion that article IV must be looked-to, first, to determine the type and amount of pension benefits to which a particular retiree is entitled; then, and only then, is article VI to be applied to see what, if any, deductions are to be made from the pension to which the retiree is entitled under article IV. The Court does not think that article VI can be construed reasonably to give any benefits which are not first authorized by article IV.

Herein, under the clear language of article IV, § 4(f)(4), the plaintiffs were entitled to receive the double pension only until they qualified for an unreduced Social Security disability pension. Once that contingency happened, they could receive only their normal lifetime pension. The "reduction" in the pensioners' benefits from a double to a single pension under § 4(f)(4), *supra*, was not the type of situation with which article VI, § 1(a) is concerned.

■ The plaintiffs' loss of the additional temporary benefit did not amount to a "deduction" from the pension benefits payable to them within the meaning of article VI, § 1(a), since, under article IV, § 4(f)(4), their temporary benefits were no longer payable. Although there is latitude for confusion, the Court is of the opinion that, insofar as the plaintiffs' temporary benefits were concerned, article VI simply had no application. Once the plaintiffs qualified for Social Security disability benefits they were no longer entitled to the temporary benefits, and, thus, it was neither necessary nor proper to look to article VI to see what deductions should be made from the temporary benefits payable since none were payable. The prohibition against considering the Social Security benefits, in determining a deduction in the amount of pension benefits payable to the plaintiffs, would be applicable in this situation only to the extent that the normal lifetime benefits, to which each is still entitled under article IV, § 4, could not be reduced on account of the receipt of such Social Security disability benefits.

■ Even if the Court were unable to reconcile reasonably the arguable inconsistency between article IV, § 4(f)(4) and article VI, § 1(a), the provisions of the former article would seem controlling. This circuit recognizes the " * * * well-settled principle of construction that if two clauses are repugnant, and cannot stand together, the first will stand and the last will be rejected. * * * " *Employers' Liability Assur. Corp. v. Morrow*, C.C.A.6th (1906), 143 F. 750, 755; *accord Berk v. Gordon Johnson Company*, D.C.Mich. (1964), 232 F.Supp. 682, 687[9]. Since article IV precedes article VI in the pension plan, under this rule of construction, article IV would prevail to the extent of any inconsistency.

Another familiar rule of construction " * * * require[s] that where there are general and specific provisions relating to the same thing, the special provisions control * * * ." *Freeland v. Freeland*, C.C.A.6th

plicable. * * * " 17 Am.Jur. (2d) 660–661, Contracts § 259 (footnote references omitted.)

" * * * Where there is an apparent repugnancy between two clauses or provisions of a contract, it is the province and duty of the court to find harmony between them and to reconcile them if possible. In other words, and as a corollary of the rule that the entire contract, and each and all of its parts and provisions, must be given effect if that can consistently and reasonably be done, all clauses and provisions of a contract should, if possible, be so construed as to harmonize with one another. Only when parts of a contract are so radically repugnant that there is no way in which they can rationally stand together must any part perish. * * * " *Ibid.*, 17 Am.Jur. (2d) at 673, § 267.

(1940), 110 F.2d 966, 968[3].[6]  In this instance, the provisions of article IV, § 4(f)(4) are specific, clear and directly applicable to the undisputed facts of this case.  On the other hand, the pertinent provisions of article VI, § 1(a) are more general and unclear.  Thus, the more specific provisions of article IV should prevail.

The Court is mindful of the general rule that pension plans are to be construed liberally in favor of the employees seeking benefits thereunder.  *See e.g.* 60 Am.Jur. (2d) 952, Pensions and Retirement Funds, § 75.  The Court is convinced, however, that, under the most reasonable interpretation of the pension plan, the plaintiffs were not entitled to receive the additional temporary disability benefit once they qualified for their unreduced Social Security disability pensions.  Under these circumstances, it would be wholly improper for the Court to grant relief to the plaintiffs under the guise of construing the plan liberally in their favor.

Pension funds are held in trust for the benefit of those persons who are, or who may become, eligible to receive them under the terms of the governing instrument.  To award those funds to persons whom the Court thinks are not entitled to them would only serve to reduce the funds available for those persons who are, or will be, entitled to such benefits.

Having determined that, under the terms of the pension plan the plaintiffs are not entitled to the benefits they seek herein, it is not necessary to consider any of the other issues raised.  It is the decision of the Court that the plaintiffs hereby are DENIED all relief herein.  Judgment will so enter.  Rule 58(1), Federal Rules of Civil Procedure.

**6.**  *Accord*: 3 Corbin on Contracts 176, § 547 ("* * * if the apparent inconsistency is between a clause that is general and broadly inclusive in character and one that is more limited and specific in its coverage, the latter should generally be held to operate as a modification and pro tanto nullification of the former. * * *");  Restatement of the Law, Contracts § 236(c);  *Smoot v. United States* (1915), 237 U.S. 38, 42, 35 S.Ct. 540, 541, 59 L.Ed. 829, 830;  *Thomas v. Matthiessen* (1914), 232 U.S. 221, 234, 34 S.Ct. 312, 313, 58 L.Ed. 577, 584.